## THE PEOPLE vs. HAWLEY.

The prohibitions of the act entitled "An Act prohibiting the manufacture of intoxicating beverages, and the traffic therein," approved Feb. 12, 1853, include strong beer and ale.

In the exercise of its police powers, a State may prohibit under penalties the exercise of any trade or employment which is found to be hazardous or injurious to its citizens, without providing compensation to those upon whom the prohibition operates.

Where the exercise of such power operates to prevent the performance of a contract previously made, the same principle applies, and the law is not within the prohibition of the Constitution of the United States.*

Case reserved from the Wayne Circuit.

This was an action brought to recover of the defendant the penalties imposed by the act approved Feb. 12, 1853, entitled "an act prohibiting the manufacture of intoxicating beverages, and the traffic therein." By the case agreed upon between the counsel of the parties, the defendant on the 22d of December, 1853, and since the first day of said month, was and had been a manufacturer of strong beer and ale, and also a seller thereof, in the city of Detroit. He had been engaged in the business of brewing malt liquors, consisting of ale and strong beer, in the city of Detroit since 1843; on the 23d of December, 1853, and on the first day of the same month, he had on hand ale manufactured in Detroit previous to that time, to the value of more than $1200, and trade fixtures to the amount of more than $15,000, put up expressly for the brewing business, and not susceptible of use for other purposes, for which or for the use thereof no compensation had been made or tendered him. The defendant on the 24th January, 1853, at Detroit, entered into a written agreement with a firm at Chicago, whereby he

* The principles declared in the opinion in this case were concurred in by a majority of the judges, as having been heretofore settled, without reference to the question of the constitutionality of the provision submitting the law to the people. The latter question was discussed by counsel on the argument of this and the next following case, and upon it the Court were equally divided. (See People vs. Collins, infra.)

agreed to sell and forward to said firm at Chicago from Detroit, all quantities of malt liquors which said firm might need in their business, for five years thereafter, which contract had remained in force since its date.   On the same day the defendant entered into similar contracts with another firm at Chicago, and one at Toledo, Ohio, all of which contracts still continued in force.   The defendant was not appointed or authorized by any person or persons in pursuance of the statute before referred to, but was engaged at the times aforesaid in manufacturing ale and strong beer for exportation under said contract, out of malt, hops and water, of the following description, viz: ale, containing 5 per cent. of alcohol, and strong beer containing a part 3, and a part 4 per cent. of alcohol.

In pursuance of one of said contracts, the defendant, on the 2d of December, 1853, at Detroit, sold and forwarded to the other party thereto, one barrel of 32 gallons of strong beer, containing 4 per cent. of alcohol, one half barrel of 16 gallons of strong beer, containing 3 per cent. of alcohol, and 2 barrels of ale of 32 gallons each, containing 5 per cent. of alcohol, and it was admitted that he intended to manufacture and sell, and was manufacturing ale and strong beer of the same kind, under his said contracts.

Upon the hearing, the following questions arose and were reserved for the opinion of this Court, viz:

1. Whether the liquors sold and manufactured by the defendant, are included within the provisions of the statute above referred to.

2. Whether said contracts of the defendant are affected by said act.

3. Whether said statute is constitutional and valid.

*Leonard & Knight*, for the people.

If the statute in question were void, as it relates to the particular contracts of Mr. Hawley, that fact would only invalidate it *pro tanto. (Danks* vs. *Quackenbush,* 1 *Comst.*

129; *Wilder* vs. *Lumpkin*, 4 *Geo.* 208; *Holmes* vs. *Holmes*, 4 *Barb. S. C.* 295; *Vedder* vs. *Ackenback*, 9 *Ib.* 327; *Greenough* vs. *Greenough*, 11 *Penn.* 489; *Ogden* vs. *Saunders*, 12 *Wheat.* 361.)

The constitution of the United States does not prohibit the States from passing *retrospective laws.* (*Saterlee* vs. *Matthewson*, 2 *Pet.* 380; *Watson* vs. *Mercer*, 8 *Ib.* 110; *Bennett* vs. *Boggs*, 1 *Bald.* 74.) Hence the United States Courts will not pronounce a statute void, merely because it affects vested rights, unless it impars the obligation of contracts. (*Charleston Bridge* vs. *Warren Bridge*, 11 *Pet.* 420.) The act now under consideration is not an *ex post facto* law, nor is it even a retrospective law. (*Smith's Com.* 149.)

It was a rule of the common law, before the adoption of the constitution of the United States, that if a person contracts or covenants to do a particular thing, which it was lawful for him at the time to do, and subsequently a statute makes it unlawful for him to perform the act, he was excused from his contract, and was not liable in damages for a breach thereof. (*Chit. on Cont.* 697; *Jaques* vs. *Whitney*, 1 *H. Black.* 67; *Touteng* vs. *Hubbard*, 3 *Bos. & Pul.* 294; *Brashear* vs. *Hodgson*, *M. & S.* 267.) This doctrine is adopted in this country. (*Brick Ch.* vs. *Mayor*, &c., 5 *Cow.* 538.)

The prohibition in the Constitution of the United States forbidding the States to pass any law impairing the obligation of contracts or other restrictions, are held not to impair the *police power* of the States. It was not to restrict the States from the power of enacting, changing, and improving their penal laws, that this prohibition was introduced into the Constitution. In the case of Dartmouth Col. *vs.* Woodward, Marshall, C. J., says, "the prohibition relates to contracts as to property, and was not intended to restrain the States in the regulation of their civil institutions. (4 *Conn. R.* 548; *License Cases*, 5 *How.* 589, 592, 627-8-9, 631-2; *Phalen* vs. *Virginia*, 8 *How.* 167; *Cone* vs. *Kimbal*, 24

The People *vs.* Hawley.

*Pick.* 363; *Gibbons* vs. *Ogden,* 9 *Wheat.* 561 ; *City* vs. *Miln,* 11 *Pet.* 132, 141.)

In Brown *vs.* Maryland, the same great Judge says, "the power to direct the removal of gunpowder is a branch of the police power which unquestionably remains, and ought to remain, with the States." (6 *Conn. R.* 362; 3 *Story on Const.* 261, 264; *Fitch* vs. *Livingston,* 4 *Sand. S. C.* 492; *Passenger Cases,* 7 *How.* 402.)

The government may, by general regulations, interdict such uses of property as would abate nuisances, and become dangerous to the lives, or health and peace, or comfort of the citizens. (2 *Kent Com.* 298.)

No citizen can forestall the Legislature by entering into long contracts, to do acts in anticipation of their being made criminal, or unlawful ; also, parties might exempt themselves from various political regulations, as laws forbidding the sale of lottery tickets, &c.

It is not the general power over the laws of the State that is prohibited, but legislating in *reference to contracts,* by altering the terms, postponing or dispensing with performance, &c., and taking the legal means of enforcement. (*Lawrence* vs. *Miller,* 1 *Saund.* 516 ; *Connor* vs. *City, &c.,* 2 *Ib.* 355; *Pembroke* vs. *Duxbury,* 1 *Pick.* 199; *Dartmouth College* vs. *Woodward,* 4 *Cond. Rep.* 526; *Danks* vs. *Quackenbush,* 1 *Comst.* 131 ; *Willard* vs. *Longstreet,* 2 *Doug.* 172 ; *Rockwell* vs. *Hubbell's Adm's.,* *Ib.* 197 ; *Bronson* vs. *Newberry, Ib.* 38; *Mich. State B'k* vs. *Hastings,* 1 *Ib.* 239–5.)

Under a statute making it penal to sell "strong or spirituous liquors," ale and strong beer are within the prohibition. (*Nevin* vs. *Ladue,* 3 *Denio,* 43 *and* 437.)

Strong beer is "intoxicating liquor," within the letter and spirit of the ordinance of the town of Akron, prohibiting the sale of " ardent spirits, or other intoxicating liquors," without a license. (*Markle* vs. *Akron,* 14 *Ohio R.* 586.) An indictment for selling "spirituous liquors" was supported by proof of the sale of common cordial. (3 *Harr.* 565.)

*J. V. Campbell* and *G. V. N. Lothrop,* for defendant.

1. The liquors manufactured and sold by the defendant are not included within the meaning of the law. Its intent was to put an end to the traffic in intoxicating beverages. Although some portion of the law, taken alone, might give some show of reason to the claim that is set up against malt liquors, yet the same interpretation would lead to results so palpably absurd, as to show its fallacy.

The first section (which, it is claimed, governs this case,) forbids the manufacture and sale of "any spirituous or intoxicating liquors, or any mixed liquors, a part of which is spirituous or intoxicating." The second section provides that an agent may be appointed to sell "spirits, wines, or other intoxicating liquors" for medicinal and mechanical purposes. The second section is as broad as the first, and there can be no question that the Legislature meant by it to provide for the sale of all liquors which might be prescribed medicinally, or which might be of use in the arts. Malt liquors are very commonly prescribed by physicians, and they are also of great utility in the arts, especially in metal founding. And it will hardly be claimed that their sale should be altogether forbidden. The town agent should certainly have power to sell them, if required medicinally, and so the second section contemplates. The third section of the act prescribes what liquors the agent may purchase. He may purchase "alcohol and spirituous liquors." It is contrary to every rule of construction to construe two dependent sections in the same statute, as repugnant, unless any other construction is impossible.

The agent cannot under his statutory power procure any other than alcoholic and spirituous liquors. To hold that the first section forbids the sale of anything but alcohol and spirituous liquors, is to enlarge it beyond the third section, and to render impossible the sale by even a town agent of many necessary articles, and to run counter to the well settled rule

of construction, that general words in connection with those having a well defined meaning, must be confined to the same class. (*Dwar. on Stat.* 736, et seq.; 2 *Bing.* 581.) And to confine the first section to alcohol and spirituous liquors is not only to harmonize it with the third section, but to give it a meaning with all our prior legislation.

Spirituous liquors are defined as follows : " A distilled liquor or spirit which contains alcohol, and is intoxicating." ( *Wor. Dic.*; *State* vs. *Moore,* 5 *Blackf.* 118; *Com.* vs. *Markoe,* 17 *Pick.* 465; *Com.* vs. *Jordan,* 18 *Ib.* 228; *Com.* vs. *Thayer,* 5 *Metc. R.* 246.)

Not only is the definition regarded as correct according to common usage, but the use of malt liquor (as well as of light wines) has been strongly approved as tending to drive out spirituous liquors. (*Smith's Wealth of Nations,* 1 *vol.* 346; *McCulloch Com. Dic.* "*Ale and Beer*"; *Edinburg Review, vol. 38. p.* 105; *Ib. vol.* 51, *p.* 213; *Redding on Wines,* 322.)

Common usage excepts malt liquors from the list both of spirituous and intoxicating liquors, and the former legislation of this State has given a meaning to the words employed in the act which excludes them.

By the laws of 1827, p. 465, cider, beer and ale are expressly declared to be neither *spirits nor strong drink.*

Also by laws of 1830, p. 36.

Also by laws of 1833, p. 124.

The laws of 1838, (*R. S.* 1838, *pp.* 206–207,) make a similar distinction, not only requiring no license for retailing malt liquors, but allowing tavern licenses, when only those liquors are sold, to be granted at half the usual rates.

The laws of 1845, p. 56, provided for submitting to the people whether licenses should be granted or not, and if "*no license*" was voted, then the authorities were prohibited from granting licenses for the sale of *any intoxicating liquors;* but if "*license,*" then they were to grant licenses according to the existing laws. *By the existing laws no license was required*

for the retail of *malt liquors or cider*, and this is, therefore, a legislative construction of the term " *intoxicating*."

The Revised Statutes of 1846 expressly provide that ale, beer and cider shall not be regarded as " *intoxicating liquors.*" (*R. S.* 1846, *ch.* 41, *pp.* 184–5–6–7–8, *compare* §§ 1, 2, 3, 4, 18, 24, 28.)

The provisions regulating the size of ale barrels, (*R. S.* 1846, 152,) are inconsistent with the provisions of Ch. 40, prohibiting the sale of liquors under 28 gallons, if licenses were required for malt liquors.

By the same statutes, (*R. S. of* 1846, 684, § 25, *and* 685, § 2,) these liquors are distinguished from ardent spirits.

Laws of 1849, 295–296, again distinguish them from " intoxicating liquors."

The Constitution of 1851 was adopted while these laws were on the statute books, and must be considered as using language in the same way.

The laws of 1851, 306–307, use " *spirituous* " and " *intoxicating*" as convertible terms.

With this unbroken array of legislative consistency in the meaning of terms, it cannot be claimed that the law of 1853 can be fairly interpreted so as to include ale and beer.

It is further to be remarked that not only are the statutes regulating the size of beer and cider barrels yet in force, but this law in providing for the manufacture of liquors for export, which require permission of the authorities, confine their action to *alcohol*. (*Sec.* 2.) Now alcohol is not manufactured by making ale or beer, but requires a further process; and if these liquors are to be included, the language of the law is not broad enough. But using section 3 as a key to its meaning, the law becomes consistent and leaves out these liquors.

If ale and beer are not included in the prohibition, the statute does not interfere with our contracts. If they are included, then the law, as it contains no saving clause, conflicts with them, and it becomes necessary to inquire into the power of the Legislature to destroy contracts.

The statute is invalid under both the United States and the State Constitutions.

It did not come into effect by lawful means.

[The argument of the counsel upon this branch is omitted.]

The act is void, because it destroys the defendant's property without securing compensation. (*Chas. R. Bridge* vs. *Warren Bridge*, 1 *Pick.* 344; *Terret* vs. *Taylor*, 3 *Pet. Cond. R.* 300; *Wilkinson* vs. *Leland*, 2 *Pet.* 657; 2 *Kent Com.* 338; *Barton & Roxbury Mill. Corp.* vs. *Newman*, 12 *Pick.* 46; *Gardner* vs. *Vil. of Newburgh*, 2 *J. C. R.* 162; *Canal Co.* vs. *R. R. Co.*, 4 *Gill. & J.* 5; *Hooker* vs. *Canal Co.*, 14 *Conn. R.* 146; *Flourney* vs. *Smith*, 3 *How. Miss. R.* 62; *Green* vs. *Briggs*, *U. S. Cir. Court, R. I.* 1835; *Hale* vs. *Lawrence*, 1 *Zabriskie R.* 714; *Walker* vs. *Board Pub. Works*, 16 *Ohio*, 540; *Crenshaw* vs. *Slate Riv. Nav. Co.*, 6 *Rand. R.* 245; *Ten Eyck* vs. *Del. R. & C. Co.*, 3 *Harr. N. J. R.* 200; *People* vs. *Platt*, 17 *J. R.* 195; *People* vs. *Canal Appraisers*, 13 *Wend.* 372.)

And payment must be either made or provided for before the property is taken. (2 *Kent Com.* 333 *and notes; Gardner* vs. *Vil. of Newburgh*, 2 *J. C. R.* 162; *Thompson* vs. *Grand Gulf R. R. & Bank Co.*, 3 *How. Miss. R.* 240; *Lyon* vs. *Jerome*, 26 *Wend.* 497; *Bloodgood* vs. *Mohawk & H. R. Rail Road Co.*, 18 *Wend.* 18; *Thacher* vs. *Dartmouth Bridge Co.*, 18 *Pick.* 501.)

The law, if applying to the defendant's business, is void as violating the obligation of the contract.

The decision in Sturges vs. Crowninshield, 4 Wheat. 122, declares fully the absolute inviolability of contracts. (*Dartmouth College* vs. *Woodward*, 3 *Pet. Cond.* 547, 553, 558; *Fletcher* vs. *Peck*, 3 *Pet. Cond.* 308; *opinion of N. H. Judges, Law R., Jan.*, 1853.)

By the Court, WING, J.

One of the questions raised upon the record in this case,

43

and submitted for our decision, is, whether strong beer and ale are included in the prohibitions of " an act prohibiting the manufacture of intoxicating beverages, and the traffic therein," approved Feb. 12, 1853.

The counsel for the defendant has attempted to show by an historical reference to the legislation of the Territory, and of this State, that strong beer and ale are not embraced by this law; that when, therefore, they were intended to be included as articles prohibited, under certain regulations, they were never described by any terms to be found in this law.

It is very true that the common use of terms in enactments, will throw some light upon their meaning in a given case, but we fear no probable, at least no conclusive clue, to the intention of the Legislature, in the use of the phrase " intoxicating drink," can be gathered from an examination of the laws of the Territory or State antecedent to this law. By the law of 1833, page 124, sec. 1, 2, and 7, spirits and strong drink are used as synonymous terms, and beer and ale as distinguished from strong and spirituous liquors; but in the same volume, at page 482, will be found " an act to prevent the selling of spirituous liquors to Indians," approved Feb. 4, 1825, in which all persons are prohibited from disposing of " spirituous liquors or other liquor of an intoxicating quality," to Indians. This law appears to include ale and strong beer. The Revised Statutes of 1838, title 9, chap. 5, sections 1, 2, 12, 14, 15, and 17, provides against the sale of wine or other spirituous liquors; at the same time a license is authorized to be given to any tavern-keeper, &c., to be so framed as to authorize the sale of beer, ale, cider, or any other fermented liquor, except wines. See sec. 23. In this code, a plain distinction is made, by which beer is classed among fermented liquors. This law continued in force until 1845, when by a law of that year, (*Sess. L., p.* 56, *No.* 46,) a license was to be authorized by a vote of towns, &c.,

for the sale of intoxicating liquors, according to the provisions of existing laws. This reference to existing laws is only made for the mode of granting the license, and not as adopting the classification made of liquors by previous or existing laws, for that was no longer recognized. The broad term "intoxicating liquors" was used, which embraces all liquors used as a beverage, and which, when so used, would or might intoxicate. This act was modified by the session laws of 1846, page 207, sec. 3, so as to prohibit the sale by tavern-keepers, &c., of intoxicating liquors, and authorized a license for the sale of distilled and fermented liquors. The next in order is the Revised Statutes of 1846, chap. 41, title 9, sec. 1, 2, and 4, which authorized a license for the sale of wine, brandy, rum, or other spirituous liquor; but by sec. 12, it is declared that "any person who shall sell or dispose of any spirituous liquor, mixed liquor, or *other intoxicating drink*, to Indians or common drunkards," thus employing in respect to this class of persons the previous sections of the same chapter, and so in sec. 15, as to spend-thrifts. In sections 18 and 24, the word intoxicating is used as synonomous with spirituous liquors; and there it includes wine, but not beer. Whoever carefully examines this chapter, will find that the words intoxicating liquors are used in a much larger sense than the words spirituous liquors.

The act of 1851, in nearly all its provisions, relates to spirituous liquors. In sections 15, 16, 17 and 18, 310, the words intoxicating drink are not used as synonymous with spirituous liquors, but in an ordinary sense, and generally in connection with spendthrifts, drunkards and Indians.

This glance at the history of our legislation upon this subject throws but little light upon the question under discussion. It shows that when the words "intoxicating drink" are used in their largest sense, they necessarily must include beer and ale; it however does not give any sanction to the views put forth by the counsel for the defendant, that the words intoxi-

cating liquors have always been used in our legislation as synonymous with spirituous liquors.

It is apparent from past legislation, that it had been supposed that the great object of temperance reform might be accomplished, or at the least that the evils of intemperance might be obviated or mitigated by restrictions thrown around the traffic in spirituous liquors, leaving strong beer and ale to be used as it might please all concerned. But experience taught the friends of temperance and the drunkard, that he who had been long accustomed to get intoxicated by the use of spirituous liquors, could accomplish the same result by the use of ale and strong beer; though this result was not quite so certain in the case of those who had not broken down their nervous system by the use of ardent spirits. The object, then, to be accomplished, was to get rid of all palliatives, and to strike at all that would intoxicate by its use as a beverage; and the result of this effort was our law of 1853, No. 66.

The title of this act is " an act to prohibit the manufacture of intoxicating beverages, and the traffic therein."

The first section provides that no person shall be allowed to manufacture or sell at any time, &c., any spirituous or intoxicating liquors, or any mixed liquors, a part of which is spirituous or intoxicating. By the second section, the board of every organized township, &c., are authorized to appoint some suitable person as agent, &c., to sell, &c., *spirits, wines,* or *other intoxicating liquors.*

We have, then, in the title of this law, broad language, not qualified by an addition or prefix; and its meaning appears to be to prohibit the manufacture and sale of all beverages that intoxicate. The first section appears to embody the prohibition contemplated by the title, with a saving clause in behalf of the agent, for whom provision is made in the second section, co-extensive with the wants of all classes, for whose benefit the exception was designed.

The third section prescribes the form of the bond which the agent is required to give, and which recites that he "has been duly appointed an agent for, &c., to sell, &c., on account of said township, &c., intoxicating liquors for medicinal and mechanical purposes, and no other."

But it is said the third section also prescribes the kind of liquor which the agent may buy, and it only authorizes the purchase of alcohol and spirituous liquors for mechanical and manufacturing purposes. And it is argued from this, that, as other liquors included in the term intoxicating liquors are useful for medicines and in the arts, and it is manifest from the second section that it was not designed to deny the sick and the artizan of their use, but as the agent cannot buy them and therefore cannot sell them, the only way to make the sections harmonize is to hold that intoxicating liquors means spirituous liquors, and that there is no prohibition against the manufacture and sale of ale and strong beer.

In addition to the provisions we have cited, the fourth section prescribes no penalty for a sale by the agent of other liquors named in the first and second sections and in the condition of his bond.

It is manifest there is an accidental omission in the third section in regard to raising money, to enable the agent to buy liquors; but is there anything in this section which upon a fair construction, will operate as a prohibition to the agent to buy other liquors besides those for which the towns are in express terms authorized to raise money? This statute must have a reasonable construction, and "in construing acts, Judges are to look at the language of the whole act, and if they find any particular clause or expression not so large and extensive in its import as those used in other parts of the acts, and upon a view of the whole act they can collect from the more large and extensive expression used in the other parts, the real intention of the Legislature, it is their duty to give effect to the large expression." (7 *B. & C.* 643;

*Dwar. on Stat.* 704.) This very reasonable rule covers the case fully, and will authorize the raising of money by the towns to buy any liquors that are named in the first and second sections of the act.

We have thus reviewed the provisions of this law, and we have no difficulty in saying that its prohibitions are plainly directed against the manufacture and sale of strong beer, except as in said law excepted.

The undersigned agree in the foregoing views.

[Signed,]    WARNER WING,

A. PRATT,

SAM'L T. DOUGLASS.

The undersigned agree in the following views :

It is urged by the counsel for the defendant, that having a large investment of money in buildings and fixtures connected with his business of brewing ale and strong beer, which are useless for any other purpose, the Legislature cannot deprive him of the use of his said property for the purpose for which it was designed, without providing compensation for his buildings and fixtures. But we negative this assumption. In the exercise of its police power a State has full power to prohibit under penalties the exercise of any trade or employment which is found to be hazardous or injurious to its citizens and destructive of the best interests of society, without providing compensation to those upon whom the prohibition operates.

The same principle applies to the position assumed by the defendant in reference to this contract. The law does not operate directly upon the contract, and therefore it is not within the prohibitions of the Constitution of the United States, or of this State. Indeed, the defendant stands in a very singular attitude. By similar means, any man might forestall legislation, and fasten upon any community the endurance of the presence of the most decidedly hazardous occupation for an indefinite number of years. But pressed for

time as we are at this late stage of the term, we cannot state the law upon this subject as fully as we could desire.

We are also of the opinion that it is competent for this Court upon the facts stated, to decide upon the intoxicating quality of strong beer and ale. See 3 Denio, 274.

[Signed,] WARNER WING,
S. M. GREEN,
SAM'L T. DOUGLASS,
D. JOHNSON,
GEO. MARTIN.

Let it be certified to the Circuit Court for the County of Wayne, as the opinion of this Court, that the defendant is not exempt from the penalties of the act entitled " an act to prohibit the manufacture of intoxicating beverages and the traffic therein," because he manufactures and sells strong beer and ale, nor because of his investments in fixtures, &c., for brewing ale and strong beer, for which the State has made no provision to pay him, nor is he exempt from its prohibitions because of his contract.

Certified accordingly.