DABBS v. THE STATE.

| 39 | 353 |
| 178 | 456 |
| 82 | 587 |

1. STATUTES: *When to be held unconstitutional.*
    Before a statute can be held unconstitutional it must be in conflict with some provision of our State or Federal Constitution, or must be opposed to natural right or the fundamental principles of civil liberty; and all doubts upon the subject must be resolved in favor of the statute.

2. SAME: PISTOL ACT: *Constitutional.*
    The third section of the pistol act of 1881 which makes it a misdemeanor to sell, among other things, "any pistol except such as are used in the army or navy of the United States and known as the navy pistol," is not unconstitutional.

ERROR to *Pulaski* Circuit Court.

Hon. J. W. MARTIN, Circuit Judge.

*W. F. Hill*, for plaintiff in error:

The *third section of the act of April 1, 1881, Acts of 1881, pp. 191–2*, is void because:

1. It is in conflict with *sec. 21, art 2, Constitution of Arkansas.*

2. It is repugnant to *sec. 22 ib.*

3. It is in violation with *sec. 1, art. 14, Constitution of the United States.*

4. It is in conflict with *sec. 8, art. 1, ib.,* "To regulate commerce, etc."

The act is entirely in excess of the reasonable police powers of the State, is inconsistent with the *genius* and spirit of our institutions, and a dangerous aggression upon the liberties of the people.

Upon fourth, see cases cited in our brief in *State v. Marsh, 38 Ark.* It prohibits the sale by importers in original packages. *Cooley Constitutional Law, p. 725, et seq., fourth ed.,* and cases cited.

Such a law overthrown in Georgia. *Nunn v. State, 1 Kelly, 243.*

*Fife v. State, 31 Ark., 455,* no authority in this case. No act of this description ever sustained by any court. Not even this court has gone so far, although it has gone to considerable length. *State v. Buzzard, 4 Ark., 18; Wilson v. State, 33 ib., 557; Walker v. State, 35 ib., 386.*

This court, in *Carroll v. State, 28 Ark., 99,* intimated that an act of this class would not be sustained unless it is a *reasonable police regulation,* and not an unwarranted usurpation under that pretense.

See discussion and citations, *Cooley on Constitutional Law, pp. 433–5, (side pages 350 to 359).*

*Moore, Attorney-General,* for the State:

The act is a mere police police regulation; is reasona-

ble and is constitutional. *People v. Hawley, 3 Mich., 330, 342; State v. Wheeler, 25 Conn., 290, and especially 296–7.*

It is presumed constitutional, and if there be any doubt it must be construed in favor of its constitutionality. *C. & F. R. Co. v. Parks, 32 Ark., 131; Cooley on Const. Lim., p. 204, and 220 to 223.* It is clearly within the police powers of the State. *Ib., top p. 713, 725–6–7–8, 731–2.*

The right to "keep and bear arms" may be absolutely prohibited. *State v. Buzzard, 4 Ark., 18; Fife v. State, 31 ib., 455.*

SMITH, J. Dabbs was indicted for selling a pocket pistol, pleaded guilty, was fined and moved in arrest of judgment. His appeal questions the constitutionality of the third section of the act of April 1, 1881. The purpose of that act, as expressed in its title, was "to preserve the public peace and prevent crime." The third section makes it a misdemeanor for any person to sell a dirk or bowie-knife, a sword or spear in a cane, brass or metal knucks, or any pistol except such as are used in the army and navy of the United States, and known as the navy pistol.

With the wisdom or expediency of such legislation we have nothing to do. But before a statute is adjudged to be unconstitutional, it must be in conflict with some provision of our State or Federal Constitution, or must be opposed to natural right and the fundamental principles of civil liberty. (*State v. Wheeler, 25 Conn., 290.*) And all doubts upon the subject are to be resolved in favor of the statute. *Eason v. State, 11 Ark., 481; C. & F. R. Co. v. Parks, 32 Ark., 131.*

1 STATUTE: When to be held unconstitutional.

The only provisions of the Constitution of the United States with which the act in question is supposed to conflict, are the commerce clause and the fourteenth amendment. But the exclusive power vested in Congress to reg-

ulate commerce with foreign nations and among the several States, has been uniformly construed not to extend to commerce, which is strictly internal and carried on entirely within the limits of a State. *Gibbons v. Ogden, 9 Wheat., 1; United States v. De Witt, 9 Wall., 41; The Daniel Ball, 10 Wall., 557; The Bright Star, Woolworth, 266.*

Thus it has been held competent for the Legislature of a State to regulate, and even to suppress, the traffic in intoxicating liquors within its borders. *License Cases, 5 How., 504; Pervear v. Commonwealth, 5 Wall., 475; People v. Hawley, 3 Mich., 330.*

And the scope and purpose of the fourteenth amendment were to secure to negroes all the civil rights that white citizens enjoy, and to prevent discriminations against them as a class, or on account of their race. *Slaughterhouse Cases, 16 Wall., 36; Strauder v. West Virginia, 100 U. S., 303.*

Nor does it conflict with *sec. 2 of art. 4,* of the Constitution of the United States, which provides that the citizens of each State shall be entitled to all privileges and immunities of citizens of the several States; for all are placed upon an equality by the act. The citizen of Tennessee can not sell the forbidden articles upon the territory of Arkansas any more than one of our own citizens.

It is further suggested that this law contravenes our bill of rights, which declares that no person shall be disseised of his estate, liberties or privileges, or deprived of his property except by the judgment of his peers or the law of the land. The act certainly does not attempt to deprive any man of his property. As it did not take effect until ninety days after its passage, time was allowed to the dealers in such articles to dispose of their stock in trade. And after the expiration of the ninety days, they might ship such goods out of the State and there sell them.

The term "privileges" no doubt includes the right to acquire, hold and dispose of property, both real and personal. This right is, nevertheless, subject to such restraints as the Government may justly prescribe for the general good. In the exercise of its police power, the State may, and does, regulate and control many professions, pursuits, trades and employments. And such as are of no real benefit to society, or are hazardous or injurious, it may prohibit under penalties. In this category may be mentioned gaming, the keeping of bawdy-houses, lotteries and the sale of lottery tickets, the sale of spirituous liquors, of obscene literature and of illuminating oils that are inflammable below a certain temperature.

It is difficult to assign bounds to the police power of the State. It extends to the protection of the lives, health, comfort and quiet of all persons and the protection of all property within the State. *Thorpe v. R. & B. R. Co., 27 Vt., 140.*

The law was enacted as a measure of precaution for the prevention of crimes and calamities. It is leveled at the pernicious habit of wearing such dangerous or deadly weapons as are easily concealed about the person. It does not abridge the constitutional right of citizens to keep and bear arms for the common defense; for it in no wise restrains the use or sale of such arms as are useful in warfare. *Fife v. State, 31 Ark., 455.*

Affirmed.