METROPOLITAN FUNERAL SYSTEM ASSOCIATION
*v.* COMMISSIONER OF INSURANCE.

1. STATUTES—TITLE OF ACT—INSURANCE CODE—AMENDMENT—MORTUARY.

Act amending the insurance code was not violative of provision of the Constitution requiring that no law shall embrace more than one object which should be expressed in its title merely because it prohibits life or accident insurance companies from owning or operating mortuaries since the amendatory act is still regulatory of the insurance business, notwithstanding it indirectly affected a mortuary business in which a cooperative insurance company was interested (Const 1908, art 5, § 21; CL 1948, § 522.32a, as added by PA 1949, No 257).

2. SAME—TITLE OF ACT—INSURANCE CODE—INTERPLAY OF INSURANCE AND MORTUARY BUSINESS.

Proscription of the interplay of the insurance and mortuary business by the same company by reason of overreaching and exercise of improper influence by insurer's agents upon beneficiaries of the deceased, the object of an act amending the insurance code, need not be expressed in the title of the code (Const 1908, art 5, § 21; CL 1948, § 522.32a, as added by PA 1949, No 257).

3. SAME—TITLE OF ACT.

Only the general object and not all the details and incidents of a statute need be indicated in the title, the title being sufficient if it fairly apprises legislators and the public generally of the act as a whole (Const 1908, art 5, § 21).

REFERENCES FOR POINTS IN HEADNOTES
[1–4]   50 Am Jur, Statutes § 180 *et seq.*
[5–9]   11 Am Jur, Constitutional Law §§ 284 *et seq.*, 295, 303 *et seq.*
[10]   11 Am Jur, Constitutional Law § 266.
[11–13]   11 Am Jur, Constitutional Law § 264.
[15]   14 Am Jur, Costs §§ 23, 91.

4. INSURANCE—TITLE OF ACT—MORTUARY.

The title to the insurance code indicates that it contains the laws which prescribe the conditions under which insurance companies may operate and is sufficiently broad to include the provisions of amendatory act prohibiting life and accident insurance companies from owning or operating mortuaries (Const 1908, art 5, § 21; CL 1948, § 522.32a, as added by PA 1949, No 257).

5. STATUTES—CLASSIFICATION.

The fundamental rule of classification for the purpose of legislation is that it shall not be arbitrary; and it is not reviewable unless palpably arbitrary and unreasonable.

6. INSURANCE—STATUTES—FUNERAL BENEFIT ASSOCIATIONS—MORTUARY.

Statute prohibiting life and accident insurance companies from owning or operating mortuaries while sick or funeral benefit associations are not barred from doing so was not invalid as arbitrary or unreasonable because of such discrimination, since the proscribed companies are influenced by the profit motive and are apt to succumb to many of the evils that arise therefrom while the latter associations are groups formed to help their own kind and the danger of overreaching or exploitation is not present (CL 1948, § 450.132; § 522.32a, as added by PA 1949, No 257).

7. STATUTES—CLASSIFICATION.

A State may properly direct its legislation against what it deems an existing evil without covering the whole field of possible abuses.

8. SAME—CLASSIFICATION.

A statute is not open to objection as to classification unless it is so lacking in any adequate or reasonable basis as to preclude the assumption that it was made in the exercise of the legislative judgment and discretion.

9. CONSTITUTIONAL LAW—BUSINESSES—POLICE POWER.

All businesses are conducted, and private contracts are made, subject to the dominant police power of the State.

10. SAME—POLICE POWER—COMPENSATION.

In the exercise of its police power a State has the full power to prohibit, under penalties, the exercise of any trade or employment which is found to be hazardous or injurious to its citizens and destructive to the best interests of society, without providing compensation to those upon whom the prohibition operates.

11. SAME—POLICE POWER—INTERFERENCE WITH CONTRACTS.

The economic interests of the State may justify the exercise of its continuing and dominant protective power, notwithstanding interference with contracts.

12. SAME—POLICE POWER—INSURANCE—MORTUARY—INTERFERENCE WITH CONTRACTS.

Statute barring life and accident insurance companies from owning and operating mortuaries was a proper exercise of the police power, notwithstanding that as a result of its enactment employment contracts between plaintiff cooperative insurance company and its employees will be terminated and insurance contracts providing alternative of a funeral or the payment of $250, valid when written, are now limited to the payment of money only (CL 1948, § 522.32a, as added by PA 1949, No 257).

13. SAME—POLICE POWER—PROSCRIPTION OF CONTRACTS.

The State always has the right, in the lawful exercise of its police power, to proscribe contracts that have been declared illegal.

14. INSURANCE—STATUTES—MORTUARY—ACTS OF AGENTS—PENALTY.

The statute prohibiting a life or accident insurance company from owning or operating a mortuary does not penalize such a company for acts of an agent in becoming associated with a mortuary without direct or indirect knowledge of such illegal action (CL 1948, § 522.32a, as added by PA 1949, No 257).

15. COSTS—PUBLIC QUESTION—INSURANCE CODE.

No costs are allowed in suit to enjoin insurance commissioner from enforcing a recent amendment of the insurance code, prohibiting a life or accident insurance company from owning or operating a mortuary, a public question being involved (CL 1948, § 522.32a, as added by PA 1949, No 257).

Appeal from Wayne; Webster (Arthur), J. Submitted June 12, 1951. (Docket No. 33, Calendar No. 45,103.) Decided September 5, 1951.

Bill by Metropolitan Funeral System Association, against David Forbes, Commissioner of Insurance, and others to restrain enforcement of PA 1949, Act No 257. Decree for defendants. Plaintiff appeals. Affirmed.

*William L. Colden* and *George Stone,* for plaintiff.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Ernest O. Zirkalos,* Assistant Attorney General, for defendants.

BUTZEL, J.  The Metropolitan Funeral System Association, a Michigan corporation, and plaintiff herein, sought to enjoin David Forbes, insurance commissioner of the State of Michigan, and Stephen J. Roth, attorney general of the State of Michigan, from enforcing the provisions of PA 1949, No 257 (CL 1948, § 522.32a [Stat Ann 1949 Cum Supp § 24.295 (1)]), this act being an amendment to part 3, ch 2 of the insurance code, CL 1948, § 501.1 *et seq.* (Stat Ann § 24.1 *et seq.*), on the grounds that the amendment violated the provisions of both the State and Federal Constitutions.  From an order denying the relief sought, this appeal has been taken.

PA 1949, No 257, provides:

"(a) It shall be unlawful for any life or accident insurance company, corporation, or association licensed to do business in this State to own, manage, supervise, operate or maintain a mortuary or undertaking establishment, or to permit its officers, agents or employees to own or maintain any such funeral or undertaking establishment.

"(b) It shall be unlawful for any life insurance, sick or funeral benefit company, or any company, corporation or association engaged in a similar business to contract or agree with any funeral director, undertaker or mortuary to the effect that such funeral director, undertaker, or mortuary shall conduct the funeral of any person insured by such company, corporation or association.

"(c) It shall be unlawful for any funeral director, undertaker, or mortuary, or any agent, officer or employee thereof to be licensed as agent, solicitor or

salesman for any life insurance company, corporation or association doing business in this State.

"(d) It shall be unlawful to designate any funeral establishment, funeral director or any person interested in or connected with any funeral establishment or director as the beneficiary in any policy of life or accident insurance whereby the said beneficiary shall, in return for all or part of the proceeds of such policy of insurance, furnish funeral services or merchandise in connection therewith.

"(e) It shall be unlawful for any life or accident, or sick or funeral benefit company, or any person, company, corporation or association, to offer or furnish goods or services or anything but money to its assureds or to his or her heirs, representatives, attorneys, relatives, associates or assigns in any connection with, or by way of encumbrance, assignment, payment, settlement, satisfaction, discharge or release of any insurance policy: Provided, That this subsection shall not prohibit any company, corporation or association from furnishing medical, surgical or hospital service.

"(f) Any person violating any of the provisions of this act shall be deemed guilty of a misdemeanor, and each violation thereof shall be a separate offense and upon conviction shall be punished by a fine not exceeding $1,000 or by imprisonment for not more than 6 months, or both such fine and imprisonment within the discretion of the courts."

The plaintiff was organized in 1936 and after passing through various stages became a cooperative assessment insurance company as provided in CL 1948, § 523A.8 (Stat .Ann 1949 Cum Supp § 24.312 [18]). It has in force some 41,000 funeral benefit policies having a maturity value of over $10,000,000. They provide that on the death of the insured the association will furnish a funeral or pay the beneficiary, at his option, $250 in cash. These policies had been approved by the commissioner of insurance, and there is no question that they were valid prior

to the passage of Act No 257, *supra*. If the act is constitutional, the plaintiff will be forced to sever all connections of every kind between the insurance and the mortuary businesses, the burial option in the policies will be outlawed and void, and plaintiff must pay $250 to the beneficiaries of the policyholders upon the death of the insured.

The policy issued by plaintiff sets forth in detail the various items and services to be furnished by plaintiff for a complete funeral and burial, without designating their quality. The policy is an "industrial" one, with a weekly premium provided for, and undoubtedly reaches people of low incomes who are inexperienced in business. The surviving beneficiary, with strained emotions caused by the very recent death in the family, is unable to tell whether the funeral services are worth $250 and he can easily be imposed upon to pay large additional amounts for a more elaborate funeral than provided for in the policy. Suffice it to say that the legislature in its discretion and in the exercise of its police power has condemned and forbidden the practice by Act No 257, *supra*. As was said in *Daniel* v. *Family Security Life Insurance Company,* 336 US 220 (69 S Ct 550, 93 L ed 632, 10 ALR2d 945):

"We cannot say that South Carolina is not entitled to call the funeral insurance business an evil. Nor can we say that the statute has no relation to the elimination of those evils. There our inquiry must stop."[*]

The plaintiff first claims that the act violates the provisions of article 5, § 21, of the Constitution of 1908, which provides:

---

[*] In footnote No 3 in the *Daniel Case, supra,* part of the deliberations of the South Carolina senate committee are referred to, and the evils sought to be abolished are denounced. The provisions of the South Carolina act are quite similar, in many respects, to Act No 257, *supra.*

"No law shall embrace more than one object, which shall be expressed in its title."

The insurance code is entitled:

"An act to revise, consolidate and classify the laws of the State of Michigan relating to the insurance and surety business; to regulate the incorporation of domestic insurance and surety companies and associations and the admission of foreign companies; to provide their rights, powers and immunities and to prescribe the conditions on which corporations organized or existing under this act may exercise their powers."

It is argued that subsection (a) of Act No 257, *supra,* regulates the ownership and operation of mortuary and undertaking establishments, and subsection (b) restricts the rights of funeral directors, et cetera, to engage in the insurance business. Therefore it is claimed that the title to the act does not express its object, and that there are 2 objects embraced within a single law, *i.e.,* the regulation of both the insurance and the mortuary businesses.

Notwithstanding the fact that any mortuary business in which plaintiff may be interested is indirectly affected, it is clear that Act No 257, *supra,* is merely a regulation of the insurance business and not of the mortuary business. The evil sought to be proscribed lies in the interplay of 2 essentially different businesses, and the opportunity presented to the insurance company and its agents by constant contacts and by the close relationship between the 2 establishments to overreach and improperly influence the beneficiaries of the deceased. The fact that mortuaries may be affected does not invalidate the act, nor was it necessary for the legislature to express this facet of the legislation in the title to the insurance code.

"Only the general object and not all the details and incidents of a statute need be indicated in the title." (Citing cases.) *People* v. *Sowall,* 279 Mich 261.

In *Regents of University of Michigan* v. *Pray,* 264 Mich 693, we said:

"Being a codification, the statute necessarily embodies various and somewhat diversified provisions of the drain law. But as against objections here raised, we do not find that the act violates article 5, § 21, of the Constitution, in that it embraces more than one object or because the title is deficient in that it is not sufficiently broad to cover the provisions of the act. Title to a codification statute can scarcely be expected to embody reference to every detail of the act. Such is not the constitutional requirement. If the title fairly apprises legislators and the public generally of the act as a whole, such title is sufficient. *Vernor* v. *Secretary of State,* 179 Mich 157 (Ann Cas 1915D 128). If the title is adequate, and the statute contains only that which is germane to its general purposes, it does not offend article 5, § 21, of the State Constitution."

The title to the insurance code indicates that the code contains the laws which prescribe the conditions under which insurance companies may operate. This is sufficiently broad to include the provisions of Public Act No 257, and we must conclude that article 5, § 21, has not been violated.

The plaintiff next claims that the amendment is unconstitutionally discriminative and denies the plaintiff equal protection of the laws in violation of the 14th amendment to United States Constitution, for section (a) prohibits a life or accident insurance company from being interested in a mortuary, et cetera, but permits sick or funeral benefit associations to do so; and section (c) makes it unlawful for a funeral director to be licensed as an agent of any life insurance company, but does not make it unlaw-

ful for a funeral director to represent a sick or funeral benefit company.

"The fundamental rule of classification for the purpose of legislation is that it shall not be arbitrary; and it is not reviewable unless palpably arbitrary and unreasonable." *Baker* v. *State Land Office Board,* 294 Mich 587, 602.

Plaintiff relies on *People, ex rel. Attorney General,* v. *Sperry & Hutchinson Co.,* 197 Mich 532 (LRA1918A 797). In that case we discussed the validity of an act prohibiting the use of trading stamps, which were given as a premium with retail sales. The act recited that the use of trading stamps was contrary to public policy. The act then exempted retail dealers from the prohibition, leaving it in effect only toward the intermediate companies which issued the stamps. We felt that the classification was unreasonable, even if the prohibition of trading stamps was a valid exercise of the police power, because legislation which exempted retail dealers did nothing toward curing the evil, but was, rather, an indirect method of protecting one business class from another without justification.

However, there is ample justification for the present distinction. Life insurance companies are influenced by the profit motive and are apt to succumb to many of the evils that arise therefrom. Funeral benefit associations, however, are groups formed to help their own kind, and the danger of overreaching or exploitation is not present. CL 1948, § 450.132 (Stat Ann § 21.133). There was no attempt to show that the legislature had acted in an arbitrary or unreasonable manner, or that the distinction arises out of anything more than the inherent difference between life insurance companies and funeral benefit associations, nor would such an attempt have been successful. The statute is neither arbitrary nor un-

reasonable. See *Daniel* v. *Family Security Life Insurance Company, supra; Lake Shore Coach Lines, Inc.,* v. *Secretary of State,* 327 Mich 146, and the extensive discussion contained therein.

Even if there were some strained grounds for plaintiff's claim that the statute is not all embracing, that of itself would not affect the constitutionality of the act. As we said in *Kelley* v. *Judge of Recorder's Court of Detroit,* 239 Mich 204, at page 215 (53 ALR 273) (quoting from *Whitney* v. *California,* 274 US 357 [47 S Ct 641, 71 L ed 1095]):

"A State may properly direct its legislation against what it deems an existing evil without covering the whole field of possible abuses. * * * The statute must be presumed to be aimed at an evil where experience shows it to be most felt, and to be deemed by the legislature coextensive with the practical need; and is not to be overthrown merely because other instances may be suggested to which also it might have been applied; that being a matter for the legislature to determine unless the case is very clear. * * * And it is not open to objection unless the classification is so lacking in any adequate or reasonable basis as to preclude the assumption that it was made in the exercise of the legislative judgment and discretion."

The plaintiff next contends that Act No 257 impairs the obligations of its contracts both with its insureds and with its employees; that vested rights are being destroyed; and that both the State and Federal Constitutions prohibit the impairment of the obligation of contract. *Ramey* v. *Public Service Commission,* 296 Mich 449, is relied upon.

It has long been settled that all businesses are conducted subject to the dominant police power of the State, and that private contracts are also subject to the exercise of that power. As we said as early

as 1854 in the case of *People* v. *Hawley,* 3 Mich 330, 342:

"In the exercise of its police power a State has the full power to prohibit, under penalties, the exercise of any trade or employment which is found to be hazardous or injurious to its citizens and destructive to the best interests of society, without providing compensation to those upon whom the prohibition operates.

"The same principle applies to the position assumed by the defendant in reference to this contract. The law does not operate directly on the contract, and is therefore not within the prohibitions of the Constitution of the United States, or of this State. Indeed, the defendant stands in a very singular attitude. By similar means, any man might forestall legislation, and fasten upon any community the endurance of the presence of the most decidedly hazardous occupation for an indefinite number of years."

In *Keefe* v. *Oakland County Drain Commissioner,* 306 Mich 503, we held that:

"The rule that existing laws are read into contracts, in order to establish the obligations between the parties, is subject, however, to the well-known reservation of the essential attributes of the sovereign power, and this reservation must also be read into contracts as a postulate of the legal order. *Baker* v. *State Land Office Board,* 294 Mich 587. As stated by the Chief Justice in *Home Building & Loan Association* v. *Blaisdell,* 290 US 398, 437 (54 S Ct 231, 78 L ed 413, 88 ALR 1481):

" 'The economic interests of the State may justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts.' "

See *Home Building & Loan Association* v. *Blaisdell,* 290 US 398 (54 S Ct 231, 78 L ed 413, 88 ALR 1481), for a scholarly discussion of the entire subject. See, also, 12 Am Jur, Constitutional Law, § 421, for

an extensive citation of Federal and local authorities.

The legislature, acting within the limits of its power, has enacted legislation which will lead to the termination of the employment contracts between the plaintiff and many of its employees. It has also modified the plaintiff's insurance contracts to the extent that money alone can be paid to the beneficiaries thereunder. The legislature passed corrective legislation to prevent an evil. That many contracts were altered or made unenforceable is of no consequence for no constitutional inhibition has been violated.

Plaintiff claims that Act No 257, *supra*, is retroactive as affecting existing contracts. The State always has the right, in the lawful exercise of its police power, to proscribe contracts that have been declared illegal. *Baker v. State Land Office Board, supra; People v. Hawley, supra.*

Plaintiff finally claims that the act imposes criminal penalties without fault, for if an agent of the insurance company becomes associated with a mortuary, without the knowledge of the insurance company, the insurance company shall be guilty of a criminal offense. The statute does not so read. Permission is required. It is difficult to conceive how one can permit a violation of Act No 257, *supra,* so as to make himself criminally liable without direct or indirect knowledge of what he was doing.

The order of the lower court is affirmed. No costs, a public question being involved.

REID, C. J., and BOYLES, NORTH, DETHMERS, CARR, BUSHNELL, and SHARPE, JJ., concurred.