PONTIAC BOARD OF EDUCATION v CITY OF PONTIAC

Docket Nos. 78-5032, 78-5033. Submitted June 4, 1980, at Lansing.—
Decided September 15, 1980. Leave to appeal applied for.

The Pontiac Board of Education brought an action in the Oak-
land Circuit Court against the City of Pontiac for mandamus to
require the city to assume the financial responsibility for school
crossing guards at preexisting and future school crossings. The
Township of Pontiac brought an action against the Pontiac
Board of Education to require the board to provide crossing
guards in the township. The cases were consolidated and the
court, Frederick C. Ziem, J., granted summary judgment
against the city and township. The city appeals. *Held:*

1. The word "responsibility" in the statute making the local
law enforcement agency "responsible" for school crossing
guards in their jurisdiction was inserted by the House of
Representatives after the Senate had earlier approved the use
of "selected and supervised" in the original bill. The Senate
thereafter approved the amended statute. The change in lan-
guage from "selected and supervised" to "responsibility" is
indicative of a legislative intent to impose upon local govern-
ments the financial obligation to pay for school crossing guards.

2. The provision is not constitutionally infirm since school
crossing guards are given specific legal authority, under the
Motor Vehicle Code, to control vehicular traffic while on duty.
This authority coincides with the references in the code's title
to regulation of vehicles on streets and highways. Statutes
designating which local government agency is to supervise and
pay for crossing guard services are both germane and auxiliary
to the guards' enforcement duties. If provisions in the body of
an act not directly mentioned in the title are germane, auxil-
iary, or incidental to the general purpose comprehensively
declared by the title, the constitutional requirement of the title-
object clause is met.

3. Mandamus lies only when there is a clear legal duty

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, §§ 145 *et seq.,* 186 *et seq.,* 204.
[2] 52 Am Jur 2d, Mandamus §§ 3, 4, 72 *et seq.*

incumbent on the defendant and a clear legal right in the plaintiff to the discharge of such duty. The specific act sought to be compelled must be of a ministerial nature, that is, prescribed and defined by law with such precision and certainty as to leave nothing to the exercise of discretion or judgment. In this case, defendant had a legal duty to pay for school crossing guards, the plaintiff had a legal right to seek compensation for its previous employees under the newly enacted statute, and the payment of salaries is a ministerial act not requiring an exercise of discretion or judgment by the defendant or its employees. The writ of mandamus was properly entered.

Affirmed.

1. STATUTES — STATUTORY CONSTRUCTION — LEGISLATIVE INTENT.

The Court of Appeals will review the specific language of a disputed provision of a statute in order to determine the legislative intent underlying the provision; in reviewing the language, the Court gives statutory terms their plain and ordinary meanings, in the absence of legislative intent to the contrary, and, if necessary, resolves the meaning of the provision by reference to outside factors, consistent with reason, which bear on the Legislature's intent.

2. MANDAMUS — MINISTERIAL ACTS — DISCRETION.

Mandamus lies only when there is a clear legal duty incumbent on the defendant and a clear legal right in the plaintiff to the discharge of such duty; the specific act sought to be compelled must be of a ministerial nature, that is, prescribed and defined by law with such precision and certainty as to leave nothing to the exercise of discretion or judgment.

*Clark, Hardy, Lewis, Fine & Pollard, P.C.,* for plaintiff.

City of Pontiac Department of Law (by *Peter A. Letzmann,* Deputy City Attorney), for defendant.

Before: DANHOF, C.J., and M. J. KELLY and G. R. CORSIGLIA,* JJ.

M. J. KELLY, J. Defendant City of Pontiac appeals an order of the Oakland County Circuit

* Circuit judge, sitting on the Court of Appeals by assignment.

Court which directed entry of a writ of mandamus requiring defendant to assume the financial responsibility for crossing guards at preexisting or future school crossings. Plaintiff Board of Education sought the disputed order after the defendant refused to subsidize the salaries of crossing guards serving in the district, an obligation previously undertaken by the board.

On June 14, 1978, the Legislature enacted MCL 257.613c(1); MSA 9.2313(3)(1), as part of an effort to redefine the authority and jurisdiction of school crossing guards. The statute provides:

"School crossing guards shall be the responsibility of the local law enforcement agency having immediate jurisdiction of the crossing."

The defendant first contests the lower court's interpretation of the statutory term "responsibility" as including a financial obligation to pay crossing guard salaries. Defendant argues that the Legislature only sought to impose upon local governments the duty to operate and control crossing guard programs as they relate to traffic management. We disagree.

The word "responsibility" is not defined in the disputed act. In the absence of such a definition, it is this Court's duty to determine the legislative intent underlying the statute.

When addressed with a question of statutory intent, this Court will first review the specific language of the disputed provision. *Lamphere Schools v Lamphere Federation of Teachers,* 400 Mich 104; 252 NW2d 818 (1977). Additionally, a statutory term will be accorded its plain and ordinary meaning in the absence of legislative intent to the contrary. *Bingham v American Screw Prod-*

*ucts Co,* 398 Mich 546, 563; 248 NW2d 537 (1976). Finally, the meaning of an ambiguous term may be resolved by reference to outside factors, consistent with reason, which bear on the Legislature's intent. *Stover v Retirement Board of the City of St Clair Shores,* 78 Mich App 409; 260 NW2d 112 (1977).

Use of the term "responsibility" often connotes the imposition of a financial obligation. However, the term may also be employed in reference to nonfinancial promises or legal duties not related to the payment of money. 77 CJS, Responsibility. Thus, "responsibility" is not an unambiguous term.

As originally proposed and passed by the Senate, the statute, Senate Bill 587, would have provided:

"School crossing guards shall be *selected and supervised by* the local law enforcement agency having immediate jurisdiction of the crossing." (Emphasis added.)

Subsequent transmittal of the bill to the House of Representatives resulted in the following amended version:

"Sec. 613c(1) School crossing guards shall be THE RESPONSIBILITY OF the local law enforcement agency having immediate jurisdiction of the crossing."

The House version of the bill was passed on May 23, 1978. On the following day, the Senate approved the bill as amended.

An additional interpretative factor is found in the Analysis of Senate Bill 587 from Superintendant of Public Instruction John W. Porter. The department recommended an amendment identical to that inserted by the House, in conjunction with

its argument that the Senate bill did not specify the agency required to pay crossing guard salaries.

We find the change in language from "selected and supervised" to "responsibility" indicative of a legislative intent to impose upon local governments the financial obligation to pay for school crossing guards. Had the Legislature intended to vest local governments with only the duty to supervise crossing guard programs, the original language proposed by the Senate would have been sufficient. The defendant's interpretation precluding financial liability is thus without merit.

Defendant next argues that the statute fails to comply with the title-object clause of our constitution, Const 1963, art IV, § 24. In *People v Milton,* 393 Mich 234, 246-247; 224 NW2d 266, 272 (1974), the Supreme Court quoted from a previous decision addressing the validity of a statutory title:

" 'An abridgement of all those sections is not essential to a sufficient title. While it contains various related provisions not directly indicated or enumerated in the title, under the construction of this constitutional requirement, as many times reviewed by this court, if the act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose, the constitutional requirement is met.' *Loomis v Rogers,* 197 Mich 265, 271; 163 NW 1018 (1917)." (Footnote omitted.)

See also, *Metropolitan Funeral System Ass'n v Comm'r of Ins,* 331 Mich 185; 49 NW2d 131 (1951).

The amended title of the Motor Vehicle Code provides in pertinent part:

"An act to provide for the registration, titling, sale, transfer, and regulation of vehicles operated upon the

public highways of this state, and distressed vehicles; * * * to provide for the examination, licensing, and control of operators and chauffeurs; to provide for the giving of proof of financial responsibility and security by owners and operators of vehicles; to provide for the imposition, levy, and collection of specific taxes on vehicles, and the levy and collection of sales and use taxes, license fees, and permit fees; to provide for the regulation and use of streets and highways; to provide penalties and sanctions for a violation of this act; to provide for civil liability of owners and operators of vehicles and service of process on residents and nonresidents; to provide for the enforcement of this act; and to repeal all other acts or parts of acts inconsistent with this act or contrary to this act."

Under a companion section of the amended vehicle code, MCL 257.613b; MSA 9.2313(2), school crossing guards are now given specific legal authority to control vehicular traffic while on duty. This law enforcement authority coincides to the references in the act's title to regulation of vehicles on streets and highways. Both germane and auxiliary to the guards' enforcement duties are those statutes designating which local government agency is to supervise and pay for crossing guard services. As such, the provision is not constitutionally infirm.

Defendant's final contention alleges that a writ of mandamus was an improper remedy, in light of its previous argument that no legal duty to pay for crossing guards was established. In *Board of County Road Comm'rs of the County of Oakland v State Highway Comm,* 79 Mich App 505, 509; 261 NW2d 329 (1977), this Court described the circumstances under which mandamus is properly entered:

"Mandamus lies only when there is a clear legal duty

incumbent on the defendant and a clear legal right in the plaintiff to the discharge of such duty. *Miller v Detroit,* 250 Mich 633; 230 NW 936 (1930). The specific act sought to be compelled must be of a ministerial nature, that is, prescribed and defined by law with such precision and certainty as to leave nothing to the exercise of discretion or judgment."

We have already concluded that MCL 257.613c(1); MSA 9.2313(3)(1) imposes upon the defendant a legal duty to pay for school crossing guards. Additionally, the plaintiff had a legal right to seek compensation for its previous employees under the newly enacted statute. Finally, the payment of salaries is a ministerial act not requiring an exercise of discretion or judgment by the defendant or its employees.

For the foregoing reasons the writ of mandamus directing defendant to pay for school crossing guards was properly entered.

Affirmed; no costs, a public question being involved.