VERBERG *v.* SIMPLICITY PATTERN COMPANY.

1. WORKMEN'S COMPENSATION—PERMANENT AND TOTAL DISABILITY—CONSTRUCTION OF STATUTE.

The transposition of the word "total" in the terms "permanent and total disability" and "total and permanent disability" in the workmen's compensation act is of no significance in interpreting the statute (CL 1948, § 412.9, as amended by PA 1955, No 250).

2. SAME—SECOND-INJURY FUND—DIFFERENTIAL BENEFITS.

Differential benefits, under the workmen's compensation act payable to an injured employee from the second-injury fund for amount of difference between benefits payable at time of subsequent amendment of the act providing for such differential benefits are not payable to persons totally and permanently disabled other than as provided for enumerated losses (CL 1948, § 412.8a; § 412.9, as amended by PA 1955, No 250).

3. SAME—PURPOSE OF SECOND-INJURY FUND—HANDICAPPED PERSONS.

The purpose of the amendatory act establishing the second-injury fund was to enhance the prospects for employment of certain handicapped persons who had previously sustained specific losses, so that they and their families would have a means of livelihood by relieving an employer of liability for payment of workmen's compensation for an injury in an amount greater than it would be for an injury to a person not so handicapped (CL 1948, § 412.8a).

4. SAME — SECOND-INJURY FUND — CLASSIFICATION — DIFFERENTIAL BENEFITS.

The selection of persons suffering permanent and total disability as defined in statute providing for payment of differential benefits from the second-injury fund was a proper classification of recipients of such benefits (CL 1948, § 412.8a; § 412.9 as amended by PA 1955, No 250).

5. STATUTES—CLASSIFICATION.

Classification for the purpose of legislation must not be arbitrary and is not reviewable unless palpably arbitrary and unreasonable, and it may rest on narrow distinctions.

---

REFERENCES FOR POINTS IN HEADNOTES

[2, 3] 58 Am Jur, Workmen's Compensation § 296.
[5] 12 Am Jur, Constitutional Law § 476 *et seq.*
[6, 7] 12 Am Jur, Constitutional Law § 521.
[8] 12 Am Jur, Constitutional Law § 477.

6. SAME—CLASSIFICATION.
   The existence of any state of facts that can reasonably be conceived must be assumed in order to sustain a legislative classification.

7. SAME—CLASSIFICATION—BURDEN OF SHOWING ARBITRARINESS.
   One who assails a legislative classification must carry the burden of showing the action is arbitrary by a resort to common knowledge or other matters which must be judicially noticed.

8. SAME—CLASSIFICATION.
   A State may properly direct its legislation against what it deems an existing evil without covering the whole field of possible abuses.

Appeal from Workmen's Compensation Appeal Board. Submitted June 3, 1959. (Docket No. 20, Calendar No. 48,080.) Decided November 24, 1959.

Arthur Verberg presented his claim against Simplicity Pattern Company, employer, Massachusetts Bonding & Insurance Company, insurer, and the State of Michigan (Second-Injury Fund) for additional workmen's compensation and differential benefits provided by legislation subsequent to development of his disability. Award of additional compensation but denial of differential benefits. Plaintiff appeals. Affirmed.

*Marcus, Kelman, Loria, McCroskey & Finucan* (*Thomas W. Finucan,* of counsel), for plaintiff.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, and *Myron A. McMillan,* Assistant Attorney General, for defendant State of Michigan (Second-Injury Fund).

*Amicus Curiae:*

*Alexander, Cholette, Buchanan, Perkins & Conklin* (*Edward D. Wells,* of counsel), for original defendant employer and insurer.

Dethmers, C. J.  Plaintiff became disabled on December 10, 1947, from long exposure to and inhalation of chrome in the course of his employment. He has not since been gainfully employed.  He received $21 per week compensation for 500 weeks, from December 10, 1947, until July 1, 1957.

On July 15, 1957, he filed application for additional benefits for permanent and total disability.  The hearing referee, after finding plaintiff permanently and totally disabled as a matter of fact, granted him, by an award later affirmed by the appeal board, an additional 250 weeks compensation from his employer, as provided, at the time of his injury in 1947, by the then language of part 2, § 9, of the act (CL 1948, § 412.9 [Stat Ann 1943 Cum Supp § 17.159]), this being in accord with our construction thereof in *Springer* v. *Reed Foundry & Machine Co.*, 346 Mich 11; but he was denied differential benefits from the second-injury fund as provided for under that same section as amended by PA 1955, No 250, because it was found that his disability was not permanent and total as defined in part 2, § 10, of the act.  The mentioned differential is the difference between the weekly amounts payable under the law in effect when the disability was incurred and the weekly amounts presently provided by law. Plaintiff appeals here from denial of the differential benefits.

Part 2, § 9, subd (a), of the act, as amended by PA 1955, No 250, read:

"While the incapacity for work resulting from the injury is total, the employer shall pay, or cause to be paid as hereinafter provided, to the injured employee, a weekly compensation of 66-2/3% of his average weekly wages, but not more than $32 if such injured employee has no dependents; $34 per week if 1 dependent; $36 if 2 dependents; $38 if 3 dependents; $40 if 4 dependents and $42 if 5 or more depend-

ents.   Weekly payments shall in no event be less
than $18 if there are no dependents; $20 if 1 de-
pendent; $22 if 2 dependents; $24 if 3 dependents;
$26 if 4 dependents; and $28 if 5 or more dependents,
and in no case shall the period covered by such com-
pensation be greater than 500 weeks from the date
of injury, nor shall the total compensation exceed
an amount equal to 500 times the total weekly amount
payable under this section 9, except for permanent
and total disability as defined in section 10, when the
compensation shall be paid for the duration of such
permanent and total disability: Provided, That the
conclusive presumption of total and permanent dis-
ability shall not extend beyond 800 weeks from the
date of injury, and thereafter the question of perma-
nent and total disability shall be determined in ac-
cordance with the fact, as the fact may be at that
time.   Any person who is permanently and totally
disabled and who is receiving payments of work-
men's compensation which are payable to such person
under this act in amounts per week of less than is
presently provided in the workmen's compensation
schedule of benefits for permanent and total disabil-
ity and for a lesser number of weeks than the dura-
tion of such permanent and total disability shall
hereafter receive weekly, without application, from
the second injury fund, an amount equal to the
difference between what he is now receiving per
week and the amount per week now provided for
permanent and total disability with appropriate
application of the provisions of paragraphs (b), (c),
(d) and (e) of this section since the date of injury.
Payments from this second injury fund shall con-
tinue after the period for which any such person is
otherwise entitled to compensation under this act
for the duration of such permanent and total dis-
ability according to the full rate provided in the
schedule of benefits."

The question on this appeal is whether a person
who is permanently and totally disabled as a matter
of fact, but not as defined in part 2, § 10, of the act,

is entitled to the differential benefits under § 9(a) as above quoted. This question was answered in 1956 in an opinion of the attorney general reported in 2 OAG 1955–1956, p 592, in which, after quoting § 9(a) as above quoted, he said:

"It is clear that the employer of an injured workman, totally disabled, will be liable for compensation for not more than 500 weeks unless the disability is 'permanent and total disability as defined in section 10.' In that event, the liability continues for the duration of permanent and total disability with a conclusive presumption of total and permanent disability for 800 weeks.

"The legislature has used 4 phrases in this section which relate to permanent and total disability; they are: 'permanent and total disability as defined in section 10'; 'such permanent and total disability'; 'total and permanent disability'; and 'permanent and total disability.' The first time that the phrase 'such permanent and total disability' and the phrase 'total and permanent disability' are used, they clearly mean 'permanent and total disability as defined in section 10.'

"At this point it should be noted that while section 9 says 'permanent and total disability as defined in section 10,' section 10 says 'total and permanent disability, compensation for which is provided in section 9.' The transposition of the terms 'total' and 'permanent,' therefore, has no significance in the proper interpretation of the statute.

"The phrase 'permanent and total disability' wherever used thereafter must, in my opinion, have the same meaning as when first used. I, therefore, conclude that the permanent and total disability which will justify differential payments from the second-injury fund must be 'permanent and total disability as defined in section 10.'

"The changes made by amendments to sections 9 and 10 compel the same construction. Part 2, § 9, as it read after the 1943 amendment by Act No 245

provided for permanent and total disability as a matter of fact. See *Springer* v. *Reed Foundry & Machine Company,* 346 Mich 11; *Edwards* v. *Michigan Light Alloys Corporation,* 346 Mich 169.

"In 1954 by Act No 175 the legal significance of section 9, insofar as permanent and total disability is concerned, was radically changed by the amendment to section 10. In the amendment to that section, the legislature said:

" 'Total and permanent disability, compensation for which is provided in section 9 hereof, means:

(1) Total and permanent loss of sight of both eyes.

(2) Loss of both legs or both feet at or above the ankle.

(3) Loss of both arms or both hands at or above the wrist.

(4) Loss of any 2 of the members or faculties enumerated in (1), (2) or (3).

(5) Permanent and complete paralysis of both legs or both arms or of 1 leg and 1 arm.

(6) Incurable insanity or imbecility.'

"The effect of this amendment to section 10 was to limit permanent and total disability in section 9 to the items defined in section 10. In the 1955 amendments any remaining doubt as to whether total and permanent disability was limited to the definition in section 10 was dispelled by the language above quoted, viz: 'except for permanent and total disability as defined in section 10.'

"All of the language in section 9 relating to payments from the second-injury fund was added by the 1955 amendment. The legislature, having clearly evidenced its intent to limit permanent and total disability to that which was defined in section 10, payments from the second-injury fund provided for in section 9 must also be so limited."

We approve and adopt the quoted language from the attorney general's opinion. As above quoted, section 10 provides that: "Total and permanent disability, compensation for which is provided in section

9 hereof, means:" thereafter follows the list of specific injuries or losses as set forth in the above quotation of section 10. The majority of the appeal board said, concerning that, in the instant case:

"It is not logical to conclude that the words 'permanent and total' used in providing differential benefits were used in a different sense than they were used elsewhere in the same section and there is nothing in section 9 as amended by PA 1955, No 250 which purported to repeal or qualify the express words of section 10."

We agree.

Are the provisions of section 9, subd (a), as above construed, barring plaintiff from the differential benefits allowed out of the second-injury fund to those with permanent and total disabilities as defined in section 10, unconstitutional as establishing an unreasonable classification? The Michigan act and those of most States, from the very beginning, provided compensation payments for fixed numbers of weeks for certain specific losses even though the injuries were not disabling as a matter of fact for such length of time, while granting compensation for other injuries only during the period of the resultant disablement. Nowhere yet has this been held to be an unreasonable classification. The very nature of such specific losses, never to be retrieved, appeals to reason, common sense and humane considerations as placing them in a class by themselves. If the classification be reasonable for the purpose of thus fixing the period of compensation, is it any less so for fixing the rate, as by addition of the differential benefits? We think not. In creating the second-injury fund the legislature provided, in part 2, § 8a, of the act (CL 1948, § 412.8a [Stat Ann § 17.158(1)]):

"If an employee has at the time of injury permanent disability in the form of the loss of a hand or

arm or foot or leg or eye and at the time of such injury incurs further permanent disability in the form of the loss of a hand or arm or foot or leg or eye, he shall be deemed to be totally and permanently disabled and shall be paid, from the funds provided in this section, compensation for total and permanent disability after subtracting the amount of compensation received by the employee for both such losses."

Similar statutes have been enacted in 45 other states, including Massachusetts. Of the purpose of such act the Massachusetts court in *Robert S. McLean's Case,* 326 Mass 72, 74 (93 NE2d 233), said:

"The purpose of the statute was to encourage the employment of persons who have previously suffered certain defined personal injuries by relieving the employer or the insurer from the burden of paying the entire compensation for further disability of the employee due to the combined effect of his previous injury and one later received in the course of his employment."

See, also, *Arview* v. *Industrial Commission,* 415 Ill 522 (114 NE2d 698). Clearly, the purpose of the above statutory provision was to enhance the prospects for employment of certain handicapped persons who had previously sustained specific losses, so that they and their families would have a means of livelihood. The statute made it certain, as an inducement to an employer to employ such persons, that in employing a handicapped person he would be required to pay no more if such handicapped person should suffer further injury than he would have been required to pay for such further injury had the person not been handicapped in the first place. 2 Larson, Workmen's Compensation Law, § 59.31. If the selection of persons suffering permanent and total disability as defined in section 10 is a reasonable classification for permitting payment to them, out of the specially created second-injury fund, of the

benefits which were provided for when the fund was originally created by statute, is it not as reasonable for purposes of payment to them from that fund of the more recently conceived differential benefits? Its effect is merely to add to the special benefits accorded this particularly unfortunate group. In *Fitzpatrick* v. *Liquor Control Commission*, 316 Mich 83, 93, 94 (172 ALR 608), this Court said:

"However, all discrimination, or so-called class legislation is not unconstitutional. *1426 Woodward Avenue Corp.* v. *Wolff*, 312 Mich 352, 374.

" 'The fundamental rule of classification for the purpose of legislation is that it shall not be arbitrary; and it is not reviewable unless palpably arbitrary and unreasonable. *Haynes* v. *Lapeer Circuit Judge*, 201 Mich 138 (LRA1918D, 233); *Straus* v. *Elless Co.*, 245 Mich 558. * * * In *German Alliance Ins. Co.* v. *Lewis*, 233 US 389, 418 (34 S Ct 612, 58 L ed 1011, LRA1915C, 1189), it is said:

" ' "A legislative classification may rest on narrow distinctions. Legislation is addressed to evils as they may appear, and even degrees of evil may determine its exercise."

" 'If any state of facts reasonably can be conceived that would sustain statutory classification, its existence must be assumed. *Naudzius* v. *Lahr*, 253 Mich 216 (74 ALR 1189, 30 NCCA 179).

" 'In *Borden's Farm Products Co., Inc.*, v. *Baldwin*, 293 US 194, 209 (55 S Ct 187, 79 L ed 281), it is said:

" ' "When the classification made by the legislature is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and one who assails the classification must carry the burden of showing by a resort to common knowledge or other matters which may be judicially noticed, or to other legitimate proof, that the action is arbitrary. *Lindsley* v. *Natural Carbonic Gas Co.*, 220 US 61 (31 S Ct 337, 55 L ed 369, Ann Cas 1912C, 160); *Ohio, ex rel. Clarke*, v. *Deckebach*, 274 US 392, 397 (47 S Ct

630, 71 L ed 1115); *Lawrence v. State Tax Commission of Mississippi,* 286 US 276, 283 (52 S Ct 556, 76 L ed 1102, 87 ALR 374)." ' * * * *Baker v. State Land Office Board,* 294 Mich 587, 602–605."

"Even if there were some strained grounds for plaintiff's claim that the statute is not all embracing, that of itself would not affect the constitutionality of the act. As we said in *Kelley v. Judge of Recorder's Court of Detroit,* 239 Mich 204, 215 (53 ALR 273) (quoting from *Whitney v. California,* 274 US 357, 370 [47 S Ct 641, 71 L ed 1095]):

" 'A State may properly direct its legislation against what it deems an existing evil without covering a whole field of possible abuses. * * * The statute must be presumed to be aimed at an evil where experience shows it to be most felt, and to be deemed by the legislature coextensive with the practical need; and is not to be overthrown merely because other instances may be suggested to which also it might have been applied; that being a matter for the legislature to determine unless the case is very clear. * * * And it is not open to objection unless the classification is so lacking in any adequate or reasonable basis as to preclude the assumption that it was made in the exercise of the legislative judgment and discretion.' " *Metropolitan Funeral System Association v. Commissioner of Insurance,* 331 Mich 185, 194.

Affirmed.

CARR, KELLY, SMITH, EDWARDS, and KAVANAGH, JJ., concurred with DETHMERS, C. J.

BLACK, J. (*concurring*). I agree fully with the reasoning of and conclusions reached by Chief Justice DETHMERS yet find myself unable to sign his opinion for one reason, that of unnecessary reaffirmance therein of what to me are extreme constitutional test-doctrines this Court adopted in *Fitzpatrick v. Liquor*

*Control Commission,* 316 Mich 83 (172 ALR 608) and *Metropolitan Funeral System Association* v. *Commissioner of Insurance,* 331 Mich 185. The extended quotations from *Fitzpatrick* and *Metropolitan* which appear in the opinion of the Chief Justice are surely due, some day, for majority re-examination. That day has not as yet arrived. In the meantime I do not care to add my signature of approval to that which has been so quoted from the 2 cases.

Under such doctrine it would be quite difficult to conceive any case where this Court might conclude that challenged legislation discriminates unconstitutionally in favor of 1 or more classes against another or others. Consequently, and so far as concerns the point of unconstitutional discrimination in this case of Verberg, I confine concurrence to the eminently proper conclusion of the Chief Justice that the selection of persons suffering permanent and total disability, as defined in section 10, is a reasonable classification in that the pertinent legislative purpose was "merely to add to the special benefits accorded this particularly unfortunate group."

I agree, on above ground, that the determination of the appeal board should be affirmed.

VOELKER, J., concurred with BLACK, J.