KOMENDERA *v* AMERICAN BAR &
CABINET MANUFACTURERS

1. Workmen's Compensation—Employer's Liability—Apportionment Rule.

The apportionment rule in workmen's compensation cases, which makes an employer liable only for an employee's loss of a specific member while working for that employer, is a judicial creation.

2. Workmen's Compensation—Successive Disabilities—Second Injury Fund.

The second injury fund does not cover a workmen's compensation claimant's successive disabilities which result in the industrial loss of use of the disabled member where each disability was sustained while working for different employers (MCLA 418-.521).

3. Workmen's Compensation—Successive Disabilities—Industrial Loss—Apportionment Rule.

An employer was liable, because of the apportionment rule, for workmen's compensation benefits for only his employee's loss of the index finger of his left hand, even though that loss, taken in conjunction with the employee's prior loss of his left ring finger and thumb while working for a different employer, resulted in a complete loss of the industrial use of the employee's left hand.

Appeal from Workmen's Compensation Appeal Board. Submitted Division 1 March 15, 1972, at Detroit. (Docket No. 11184.) Decided March 23, 1972. Leave to appeal granted, 388 Mich 755.

Reference for Points in Headnotes
[1–3] 58 Am Jur, Workmen's Compensation §§ 289, 296, 342.

Leonard Komendera presented his claim for workmen's compensation for the loss of industrial use of his left hand against American Bar & Cabinet Manufacturers and Phoenix of Hartford Insurance Company. Referee awarded compensation for the specific loss of the left index and middle fingers. Claimant appealed. Workmen's Compensation Appeal Board modified referee's decision and awarded benefits only for the loss of the left index finger. Claimant appeals. Affirmed.

*Rothe, Marston, Mazey, Sachs, O'Connell, Nunn & Freid, P.C.,* for plaintiff.

*Sullivan, Sullivan, Ranger & Ward,* for defendants.

Before: Lesinski, C. J., and J. H. Gillis and Quinn, JJ.

Lesinski, C. J. Plaintiff Leonard Komendera appeals, by leave granted, an order of the Workmen's Compensation Appeal Board affirming the decision of the hearing referee who denied plaintiff's claim for specific loss of his left hand.

The record in this case reveals that plaintiff, when employed by U. S. Radiator Company as a maintenance carpenter in 1955, severed his left ring finger and thumb in an accident suffered as he worked at a saw table. Subsequently, he entered into the employ of defendant American Bar & Cabinet Manufacturers.

On March 29, 1966, plaintiff caught his left index finger in a "joinder", and the finger was injured to the extent that amputation was required down to the proximal interphalangeal joint. After this second accident, plaintiff also complained of increased flexion deformity in his left middle finger.

The hearing referee found that plaintiff had suffered complete loss of the industrial use of his hand as a consequence of the two accidents. However, plaintiff was awarded compensation for specific loss of only the left index and middle fingers because, as the referee stated:

"While plaintiff has in fact suffered the industrial loss of use I must apply the harsh rule of *Sorensen* v *Grand Rapids Metalcraft,* 333 Mich 709 (1952), and not charge the defendant for the condition which did not wholly result from this injury. Taken by itself, this injury would not have caused the loss of use of this hand."

On review by the Workmen's Compensation Appeal Board, the decision of the hearing referee was affirmed insofar as he had denied compensation to plaintiff for specific loss of the industrial use of his hand. The Appeal Board did modify the hearing referee's ruling to the extent that it had granted benefits for loss of the industrial use of the left middle finger and, instead, awarded benefits only for loss of the index finger.

In light of our disposition of this case, we find it necessary to discuss only one of the issues raised by plaintiff on appeal. We confront here the question of the continuing validity of the Michigan Supreme Court's holding in *Sorensen, supra.*

The facts of the *Sorensen* case are almost identical to those in the instant matter. The *Sorensen* plaintiff had lost the thumb, first finger and second finger of his left hand in an accident in 1919. While employed by defendant in 1949, he injured his left hand a second time, and in the course of medical treatment, the amputation of most of the third and fourth fingers of plaintiff's left hand was required. Plaintiff was awarded compensation for specific loss of a hand. On appeal, the Michigan Supreme Court

reversed, allowing compensation solely for the two fingers lost in the second accident. The Court noted that:

"[T]he ultimate disability or loss was occasioned by the results of 2 injuries acting in conjunction. * * * we held defendant liable only for the specific loss caused by injury sustained in his employ and not for the disability resulting from that and some previous injury." *Sorensen, supra,* p 712.

The *Sorensen* Court, in its unanimous holding, relied heavily on the precedent provided by *Winn* v *Adjustable Table Co,* 193 Mich 127 (1916).

In *Winn,* plaintiff, after losing the third finger of his right hand, was found to be totally incapacitated. He had previously lost the larger part of the other three fingers of his right hand. The Court, in reversing the order of the Industrial Accident Board, held that "the injury must be treated simply as the loss of the third finger, for which the claimant is specifically compensated by the terms of the statute". *Winn, supra,* p 132.

Plaintiff argues that the *Sorensen* decision was implicitly overruled by the Michigan Supreme Court in *Coombe* v *Penegor,* 348 Mich 635 (1957), and *Sheppard* v *Michigan National Bank,* 348 Mich 577 (1957). We have analyzed in great detail the multitudinous *Sheppard* and *Coombe* decisions and conclude that they were not intended to overrule *Sorensen.*

Of the seven justices who participated in the decisions of *Sheppard* and *Coombe,* six authored separate opinions. It is true that language appearing in Mr. Justice SMITH's concurring opinion in *Sheppard* could be interpreted as support for the position that *Sorensen, supra,* was tacitly overruled there. That opinion was joined in by only one other justice, however. Interpreting the plethora of

judicial views in an addendum to his opinion, Mr. Justice SMITH stated in *Sheppard,* pp 604–605:

"[D]espite the tortuous paths trod, particularly this date, despite the gusts of words, despite the forays of relentless logic that have started on the broad highway of reason and ended in a cornfield of confusion—despite all this, one fact stands out: It is now agreed by others than the signers of this opinion that one suffering a personal injury due to a single event may receive award under part 2 without fortuitous cause and without regard to the claimant's preexisting health."

*Sheppard* did make it clear that a claimant could recover under part 2 of the Workmen's Compensation Act, MCLA 412.1, *et seq.;* MSA 17.151, *et seq.,* for a personal injury without its being accidental in origin. Consonant with this ruling, plaintiff in *Sheppard* was allowed to recover for a disabling back injury incurred when lifting a 25-pound tray of IBM cards that had become lodged in a tub file.

Likewise, in *Coombe,* plaintiff, who had suffered a subarachnoid hemorrhage after binding a load of logs on a truck, was allowed to recover under part 2 of the act. *Coombe,* in addition to other issues, involved an interpretation of whether the act required that the injury incurred be the result of an accident when there was evidence of a preexisting physical defect. See *Coombe, supra,* p 656 (EDWARDS, J., *concurring*). It was held that there was no such requirement, as the Court refused to differentiate "between the workman who had a physical defect preexisting the injury and him who did not". *Coombe, supra,* p 657 (SMITH, J., *concurring*).

The *Sheppard* case, then, at its foundation, involved the right to recovery in an absolute sense under the Workmen's Compensation Act, in the absence of an "accident or fortuitous injury". The *Coombe*

opinion adopted the *Sheppard* interpretation of part 2 of the act, holding that such a fortuitous injury was unnecessary as a prerequisite to recovery even when there was evidence of preexisting ailment or injury.

On the other hand, the *Sorensen* opinion involved the amount of specific loss liability for which an employer would be held accountable, when the ultimate loss was caused by two injuries acting together. There was no issue in either *Winn* or *Sorensen* as to whether the injury was the result of an accident since the injuries in both cases clearly were occasioned by accidents. Plaintiff's argument that *Sorensen* was overruled by *Sheppard* and *Coombe* is without merit.[1]

*Sorensen* was concerned, rather, as is the instant case, with the problem of successive disabilities. The difficulty arises from the fact that:

"The total effect of two successive injuries may be much greater than the sum of schedule allowances for the parts, the commonest illustration being a loss by a man blind in one eye of his remaining eye." 2 Larson's Workmen's Compensation Law (6th ed), § 59.00, p 88.103.

The Michigan Supreme Court in *Sorensen* adopted an approach to this problem termed apportionment, in which the employer pays only for the claimant's specific member lost in his employment. Unlike most other states which employ the apportionment rule, Michigan's version was judicially-created, rather than mandated by statute. 2 Larson's Workmen's Compensation Law (6th ed), § 59.20, p 88.107. We recognize that the *Sorensen* rule leads to a harsh result in that the worker is forced to bear a sub-

---

[1] We also deem it significant that the compendious summaries of prior Michigan law in *Sheppard* v *Michigan National Bank*, 348 Mich 577 (1957), and *Coombe* v *Penegor*, 348 Mich 635 (1957), contain no references to *Sorensen* v *Grand Rapids Metalcraft*, 333 Mich 709 (1952).

stantial part of the ultimate financial loss brought about by the injury.

The Michigan Legislature has provided for the creation of a second injury fund to provide for certain successive disability situations. The purpose of the second injury fund, as stated by the Michigan Supreme Court in *Verberg* v *Simplicity Pattern Co,* 357 Mich 636, 643 (1959):

"[W]as to enhance the prospects for employment of certain handicapped persons who had previously sustained specific losses, so that they and their families would have a means of livelihood. The statute made it certain, as an inducement to an employer to employ such persons, that in employing a handicapped person he would be required to pay no more if such handicapped person should suffer further injury than he would have been required to pay for such further injury had the person not been handicapped in the first place."

Additionally, of course, the fund compensates the employee in full for the total loss he has suffered, avoiding the unconscionable result under apportionment where the employee receives significantly less benefits than his situation necessitates to avoid destitution. See 2 Larson's Workmen's Compensation Law (6th ed), § 59.31, p 88.119.

Michigan's second injury fund provision, MCLA 418.521; MSA 17.237(521), does not cover an injury such as that involved in the instant case, however. It includes within its scope those factual contexts where the employee has an injury of a permanent nature involving loss of an arm, leg, hand, foot, or eye, and subsequently suffers another permanent injury in the course of his employment involving the loss of an arm, leg, hand, foot or eye. In addition, a recent amendment[2] provides for fund coverage of

[2] 1971 PA 183, signed into law December 20, 1971. This amendatory act will take effect July 1, 1972.

an individual certified as vocationally handicapped, which includes one having "a medically certifiable impairment of the back or heart or who is subject to epilepsy and whose impairment is a substantial obstacle to employment". MCLA 418.901(a); MSA 17.237(901)(a). Yet, no provision has been made for a person in the position of plaintiff in this case. Because of the restrictive scope of the Michigan second injury fund, plaintiff is relegated to the stern fate dictated by the *Sorensen* rule.

Plaintiff points out that *Sorensen* has never been followed, or even cited, in later decisions by Michigan courts. However, our role as an intermediate appellate court is limited, and we are not free to disregard clear precedent of this state's highest court. *Tait v Ross*, 37 Mich App 205 (1971).

We also note that the approach which plaintiff proposes that we adopt in a successive disability case has detrimental effects on handicapped employees. The so-called "full-responsibility" rule, which imposes upon the employer complete liability for the ultimate disability, has:

"[P]roved the worse of the two evils from the standpoint of the handicapped worker. As soon as it became clear that a particular state had adopted a rule requiring an employer to bear the full cost of total disability, * * * employers had a strong financial incentive to discharge all handicapped workers who might bring upon them this kind of aggravated liability." 2 Larson's Workmen's Compensation Law (6th ed), § 59.31, pp 88.118–88.119.

This was recognized by the Supreme Court's statement in *Verberg, supra.*

In addition to the *Sorensen* decision, then, public policy also dictates against adopting the "full responsibility" rule argued for by plaintiff.

The proper solution to the dilemma which we face here in reaching this seemingly unconscionable result as to this plaintiff, rather than erecting a barrier to hiring the handicapped, would seem to be the further extension of the second injury fund provision to encompass situations like the instant one. As was noted by one legal commentator:

"[A]n * * * inadequacy of the present Michigan second injury fund statute is that it severely limits the kinds of preexisting handicaps that are covered * * * . Thus, persons who have lost a minor member * * * are excluded. * * * It is therefore submitted that if the Michigan statute is to encourage the employment of handicapped persons, it must be expanded to cover all persons having handicaps, both patent and latent, which are serious enough to constitute an obstacle to employment." Note: *Encouraging Employment of the Handicapped in Michigan: A Proposal for Revision of the Michigan Second Injury Fund,* 67 Mich L Rev 393, 398–399 (1968).

Although we recognize the inequities of this situation, the task of expanding the coverage provided by the second injury fund is a legislative function, not a judicial one.

Therefore, we are compelled to affirm the decision of the Workmen's Compensation Appeal Board denying plaintiff compensation for specific loss of the industrial use of his hand. In light of our disposition of this case, we find it unnecessary to determine the evidentiary question raised by defendant on appeal.

Affirmed.

All concurred.