KOMENDERA v AMERICAN BAR & CABINET MANUFACTURERS

OPINION OF THE COURT

1. WORKMEN'S COMPENSATION—SECOND INJURY FUND—TOTAL AND PERMANENT DISABILITY—HANDICAPPED PERSONS—DIFFERENTIAL BENEFITS.

Statute creating Second Injury Fund allows an employee to recover workmen's compensation for total and permanent disability from that fund where the employee has suffered loss of one member of his body from injuries related *or unrelated* to employment covered by the workmen's compensation law and subsequently suffers loss of another member from causes arising out of and in the course of employment covered by the workmen's compensation law (MCLA 412.8a).

2. WORKMEN'S COMPENSATION—LOSS OF HAND—PAYMENT OF AWARD—LAST EMPLOYER.

*Weaver v Maxwell Motor Co,* 186 Mich 588 (1915); *Winn v Adjustable Table Co,* 193 Mich 127 (1916); *Collins v Albert A. Albrecht Co,* 212 Mich 147 (1920); and *Sorensen v Grand Rapids Metalcraft,* 333 Mich 709 (1952) are overruled to the extent that they are inconsistent with this opinion holding that a plaintiff is entitled to an award for industrial loss of the use of his hand where he sustained an injury to his left hand which amputated his ring finger and half of his thumb and later, while working for another employer, he suffered an injury resulting in amputation of the index finger of his left hand; this payment to be made by the last employer.

3. WORKMEN'S COMPENSATION—SPECIFIC LOSSES—CLASSIFICATION.

The Michigan Workmen's Compensation Act and those of most states, from the very beginning, provided compensation payments for fixed numbers of weeks for certain specific losses even though the injuries were not disabling as a matter of fact for such length of time, while granting compensation for other

REFERENCES FOR POINTS IN HEADNOTES

[1, 5–8, 11] 58 Am Jur, Workmen's Compensation § 296.
[2, 4, 10] 58 Am Jur, Workmen's Compensation §§ 5, 81, 132 *et seq.*
[3, 9] 58 Am Jur, Workmen's Compensation § 287 *et seq.*

injuries only during the period of the resultant disablement; nowhere yet has this been held to be an unreasonable classification; the very nature of such specific losses, never to be returned, appeals to reason, common sense and humane considerations as placing them in a class by themselves.

4. WORKMEN'S COMPENSATION—FINDING OF FACT—LOSS OF HAND.

Michigan Supreme Court is bound by findings of workmen's compensation referee and the Workmen's Compensation Appeal Board that plaintiff's left hand is now industrially useless for common labor.

5. WORKMEN'S COMPENSATION—SECOND INJURY FUND—LOSS OF HAND.

Workmen's compensation Second Injury Fund provisions do not provide coverage for an injury sustained by a plaintiff to his left hand which amputated his ring finger and half of his thumb and later, while working for another employer, suffered another injury resulting in the amputation of the index finger of his left hand, which resulted in the industrial loss of use of his left hand (MCLA 418.521).

6. WORKMEN'S COMPENSATION—SUPREME COURT—SECOND INJURY FUND.

Michigan Supreme Court should refuse to further restrict the benefits flowing to an employee under the Workmen's Compensation Act, although the act is now deficient and ineffective in further protecting the rights of the employer from a conceded inequity in that the Michigan Second Injury Fund statute severely limits the kinds of preexisting handicaps that are covered and excludes persons who have lost a minor member (MCLA 418.521).

7. WORKMEN'S COMPENSATION—SECOND INJURY FUND—LEGISLATIVE FUNCTION—JUDICIAL FUNCTION.

The task of expanding the coverage of the workmen's compensation Second Injury Fund is a legislative function, not a judicial one.

8. WORKMEN'S COMPENSATION—LOSS OF HAND—SECOND INJURY—PAYMENT OF AWARD—LAST EMPLOYER.

Plaintiff is entitled to an award for industrial loss of the use of his hand where he sustained an injury to his left hand which amputated his ring finger and half of his thumb and later, while working for another employer, he suffered an injury resulting in amputation of the index finger of his left hand, a second injury causing industrial loss of use of the hand; this payment to be made by the last employer.

OPINION DISSENTING IN PART AND CONCURRING IN PART

T. E. BRENNAN, SWAINSON, and M. S. COLEMAN, JJ.

9. WORKMEN'S COMPENSATION—SEPARATE INJURIES.

The Court created policy should be reaffirmed that where the ultimate disability or loss is occasioned by the results of two injuries acting in conjunction the employer is liable for workmen's compensation benefits for the specific loss caused by injury sustained in his employ and not for the disability resulting from that and some previous injury.

10. WORKMEN'S COMPENSATION—FULL RESPONSIBILITY RULE—PUBLIC POLICY—SEPARATE INJURIES—SEPARATE EMPLOYERS—HANDICAPPED WORKERS.

Public policy dictates against adopting the "full responsibility" rule because any advantage gained by the particular plaintiff in requiring the last employer to bear full responsibility for the effect of separate injuries, one of which occurred during employment by another, is far outweighed by the potential adverse effect on the opportunity of previously injured and handicapped workers to obtain and retain gainful employment.

11. WORKMEN'S COMPENSATION—SECOND INJURY FUND—SEPARATE INJURIES—SEPARATE EMPLOYERS.

There is little question that the Second Injury Fund in principle should, but does not, extend to cases such as one where a plaintiff lost his left ring finger and part of his thumb in an employment-related accident and 11 years later lost part of his index finger in another employment-related accident while employed by another employer and the combination of injuries resulted in the industrial loss of the use of his left hand and rendered him unable to continue his trade of cabinetmaker because the language of the statute does not encompass the type of injury sustained and the Michigan Supreme Court could not award plaintiff monies from the fund unless it were willing to assume amendatory legislative powers which it should not do (1965 PA 32).

Appeal from Court of Appeals, Division 1, Lesinski, C. J. and J. H. Gillis and Quinn, JJ., affirming the Workmen's Compensation Appeal Board. Submitted April 3, 1973. (No. 15 April Term 1973, Docket No. 54,065.) Decided November 20, 1973.

39 Mich App 370 reversed.

Claim by Leonard Komendera against American Bar & Cabinet Manufacturers and Phoenix of Hartford Insurance Company for workmen's compensation for the loss of industrial use of his left hand. Award granted only for the loss of the left index finger. Plaintiff appealed to the Court of Appeals. Affirmed. Plaintiff appeals. Reversed and remanded to the Workmen's Compensation Appeal Board to enter an award for loss of hand.

*Rothe, Marston, Mazey, Sachs, O'Connell, Nunn & Freid, P. C.,* for plaintiff.

*Sullivan, Sullivan, Ranger & Ward,* for defendants.

Amicus Curiae: *Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Lee A. Decker* and *A. C. Stoddard,* Assistants Attorney General, for Second Injury Fund.

T. M. KAVANAGH, C. J. This case is before us on leave granted, 388 Mich 755 (1972), from a decision of the Court of Appeals, 39 Mich App 370; 197 NW2d 511 (1972) upholding a ruling of the Workmen's Compensation Appeal Board that because *Sorensen v Grand Rapids Metalcraft,* 333 Mich 709; 53 NW2d 590 (1952) still prevailed in this state, plaintiff was not entitled to benefits for the loss of use of his hand. The facts giving rise to this appeal are as follows:

Plaintiff was employed during the year 1955 by the U.S. Radiator Company as a maintenance carpenter. While there, during his employment, he sustained an injury to his left hand which amputated his ring finger and half of his thumb. He also suffered some flexion loss to his middle finger at

this time due to his palm having been cut in the accident.

He recovered from his accident and became a cabinet maker, which occupation he pursued until early March 1966 at which time he was hired by defendant, American Bar and Cabinet Manufacturers in that capacity. On March 29, 1966, plaintiff again suffered an injury during the course of his employment. The accident resulted in amputation of the index finger of plaintiff's left hand. Upon his return to work, plaintiff found he was no longer able to make effective use of his left hand and thus was no longer able to perform his job as cabinet maker. He has now gained new employment in a non-skilled job as an assembler.

Plaintiff filed a petition with the Workmen's Compensation Department alleging that he had lost the industrial use of his left hand and requesting the statutory benefits therefor. After a full hearing, the referee made the following findings:

"I find that the plaintiff has suffered the industrial loss of use of his left hand not only in his skilled work as a cabinet maker but in the field of common labor. Compensation is ordered paid in accord with *Magreta v Ambassador Steel Company.* While plaintiff has in fact suffered the industrial loss of use, I must apply the harsh rule of *Sorensen v Grand Rapids Metalcraft,* 333 Mich 709 and not charge the defendant for the condition which did not wholly result from this injury. Taken by itself this injury would not have caused the loss of use of this hand."[1]

Upon appeal to the Court of Appeals, that Court stated:

---

[1] The referee awarded plaintiff benefits for the loss of his index finger and also for the loss of use of his middle finger. The Appeal Board, also relying on *Sorensen, supra,* modified this ruling and allowed benefits to be awarded only for the actual loss of the index finger.

"We recognize that the *Sorensen* rule leads to a harsh result in that the worker is forced to bear a substantial part of the ultimate financial loss brought about by the injury." 39 Mich App 370, 375–376.

"Plaintiff points out that *Sorensen* has never been followed, or even cited, in later decisions by Michigan courts. However, our role as an intermediate appellate court is limited, and we are not free to disregard clear precedent of this state's highest court." 39 Mich App 370, 377.

Due to the questioned continued validity of *Sorensen supra,* this Court granted leave to appeal.

The issue presented to this Court bottoms itself on the fact that when an individual suffers consecutive losses of parts of his body, there comes a point in time when the cumulative effect of these losses presents a far greater disability than any one loss considered of and by itself. Thus, an individual who has lost a leg is indeed unfortunate, but, in the majority of situations is far from being absolutely and totally disabled. In most situations he is able to continue to lead a close to normal life. But when that same individual then loses the remaining leg, a different situation presents itself. Though it is true that as a result of the second injury he has only lost one leg, and should not be totally disabled from that loss alone, due to the fact that he only had one leg to lose, he may now be considered, and in fact may be, totally disabled.

This Court has to answer the question of whether, in a situation akin to that above, the employer responsible for the second injury alone, should be liable only for that specific injury, or for the actual total disability now suffered by the claimant. *Sorensen, supra,* holds the employer liable only for the former.

This type of issue was first before our Court in

*Weaver v Maxwell Motor Co,* 186 Mich 588; 152 NW 933; 1916B LRA 1276 (1915). In *Weaver,* the plaintiff suffered the loss of his right eye prior to the enactment of our workmen's compensation statute in 1912. Such loss, of course, was not compensable. Subsequently, he suffered a compensable loss of his left eye which left him totally blind. The Court at that time ruled that since the present employer was in no way responsible for the previous injury, this injury could not be combined with the later one to produce total disability. It held the employer liable only for the loss of the left eye.

Following *Weaver, supra,* the Court decided *Winn v Adjustable Table Co,* 193 Mich 127; 159 NW 372 (1916). In *Winn,* the plaintiff had lost three fingers of his right hand previously in a non-compensable accident. Later, during his employment at Adjustable Table Co, he suffered a further loss of his remaining finger. Plaintiff also suffered from a shoulder ailment and a severe arthritic condition, and, since the culmination of all these conditions left him unable to work, he applied for extended partial disability benefits. The Industrial Accident Board treated this fact situation as an industrial loss of use of an arm and awarded benefits accordingly. Our Court, relying solely on *Weaver v Maxwell Motor Co, supra,* reversed and awarded benefits solely for the loss of a finger. The Court reasoned that since the claimant was totally disabled, partial disability benefits were inappropriate.

This Court next decided *Collins v Albert A. Albrecht Co,* 212 Mich 147; 180 NW 480 (1920). In that case, Mr. Collins had, prior to his employment with the Albrecht Company, suffered the non-compensable loss of his left eye. During his

employment he suffered the loss of use of his remaining right eye due to an industrial accident. He applied for permanent and total disability benefits being now unable to continue his occupation as a carpenter. This Court denied the permanent and total benefits to Mr. Collins based solely on its prior holding in *Weaver, supra.* He received benefits only for the loss of his right eye.

With this judicial precedent present in our system of jurisprudence, the now troublesome case of *Sorensen v Grand Rapids Metalcraft,* 333 Mich 709; 53 NW2d 590 (1952) came before the Court. In *Sorensen* plaintiff had suffered previously the noncompensable loss of the thumb, index and middle fingers of his left hand. This loss was occasioned when, as a child, he had picked up a dynamite cap which exploded in his hand. Reaching maturity, plaintiff developed a dexterity with his left hand in that he could use it as well as his right hand. He held many two-handed jobs and was in no way handicapped in his employment from the loss he suffered as a child.

While employed at defendant's place of business as a punch press operator, he suffered an industrial injury which cost him the remaining two fingers on his left hand. The Commission found he had lost the industrial use of his left hand and awarded compensation accordingly. This Court reversed, finding that plaintiff was entitled only to benefits payable for the loss of his remaining two fingers. The Court stated its findings[2] were controlled by the decisions previously entered in

---

[2] The parties argued on appeal that Mr. Sorensen had not actually lost the industrial use of his hand due to the fact he remained employed and continued at his previous employment. He still performed the duties of a punch press operator. This issue was not decided by the Court due to its holding the case was controlled by *Weaver.*

*Weaver, Winn,* and *Collins,* which cases we have discussed above.

As noted by plaintiff's attorneys, this Court has not spoken on or cited the *Sorensen* opinion since its initial release. We have, however, many times spoken on the issues raised in the cases upon which *Sorensen* is founded, and on the general equities presented in the *Sorensen* situation.

In *Verberg v Simplicity Pattern Co,* 357 Mich 636; 99 NW2d 508 (1959), Justice DETHMERS, also the author of *Sorensen,* recognized the harshness of the *Sorensen* rule in stating (p 643):

" 'The purpose of the statute[3] was to encourage the employment of persons who have previously suffered certain defined personal injuries by relieving the employer or the insurer from the burden of paying the entire compensation for further disability of the employee due to the combined effect of his previous injury and one later received in the course of his employment.'

\* \* \*

"Clearly, the purpose of the above statutory provision was to enhance the prospects for employment of certain handicapped persons who had previously sustained specific losses, so that they and their families would have a means of livelihood."

*Verberg* stands for the proposition that the initial specific loss suffered by an employee of a part of his body need not have been employment related nor compensable in nature. *Whitt v Ford Motor Co,* 383 Mich 726; 178 NW2d 917 (1970); *Hilton v Oldsmobile Division,* 390 Mich 43; 210 NW2d 316 (1973). Thus by his ruling in *Verberg* Justice DETHMERS *sub silentio* overruled the Court's previous decisions in *Maxwell, Winn,* and *Collins.* This author made that point abundantly

---

[3] The Court was speaking of the creation of the Second Injury Fund and its accompanying statutory amendments.

clear in *Whitt v Ford Motor Company, supra,*
when he wrote for the Court:

"The creation of the Second Injury Fund under § 8a
is a legislative limitation on the decision of *Weaver v
Maxwell Motor Co supra,* insofar as it allows an em-
ployee to recover compensation for total and permanent
disability from the Second Injury Fund where the em-
ployer has suffered the loss of one member from inju-
ries related *or unrelated* to employment covered by the
workmen's compensation law and subsequently suffers
the loss of another member from causes arising out of
and in the course of employment covered by the work-
men's compensation law. To this extent it removes the
effect of *Weaver."* 383 Mich 726, 731. (Emphasis sup-
plied.)

When this author spoke for the Court in *Whitt,*
the intention of the Court was to remove from the
jurisprudence of this state the harsh, inequitable
rule and effect which *Weaver v Maxwell Motor Co.
supra,* had exerted on our workmen's compensa-
tion law.[4] The Court felt that it had clearly stated
that *Weaver* would no longer be followed in this
state and was overruled. Accordingly, any cases
subsequent to *Weaver,* which owe their existence
to and base their foundations solely on the
strength of and the rationale of the *Weaver* deci-
sion are of highly questionable continued validity;
this Court is not now bound by their precedent.
*Winn, Collins,* and *Sorensen* are such cases. All
draw their strength and continued validity from
the *Weaver* rule that prior noncompensable inju-
ries may not be considered in determining the
extent of the disability a plaintiff suffers when he
incurs a second compensable injury. To the extent

[4] This was recently reaffirmed by this Court in *Hilton v Oldsmobile
Division,* 390 Mich 43; 210 NW2d 316 (1973).

that they are inconsistent with this opinion they are hereby overruled.

Turning now to the instant case, this Court must now determine to what benefits plaintiff is entitled, and upon whom the burden of paying those benefits should fall.

The argument is made that plaintiff has only lost his index finger as a result of the second accident. He could not have lost an entire hand, the argument goes, as he did not have an entire hand to lose. He had already lost one finger and part of a thumb from that hand. For those losses he was compensated according to the act and should not again be compensated. At first glance, this argument appears to have merit. However, upon closer scrutiny, it fails in that it does not recognize the legislative intent behind the awarding of specific benefits for losses of this nature.

When a man loses a finger, a toe, a hand, or another part of his body this loss cannot be cured by treatment, can never be retrieved, and is a loss akin to no other. When the injured employee first suffers the loss there is, to be sure, the physical pain and suffering accompanying accidents of that nature. Even when the wound has healed to the best extent it ever will, there still remains the disfigurement. Ever present is the continuing psychological and mental anguish over the loss, and the continuing frustration over never again having use of that portion of the body.

Next comes the days, months, perhaps years of struggle and adjustment wherein the injured employee must learn to accustom himself to his new situation and to rehabilitate himself. He must learn new ways of doing old, habitual acts which were of a second nature to him. Still, there remains the anguish and the frustration when he

momentarily lapses into his old ways, always to
his embarrassment. Further, we need not say. The
specific loss provisions of the act were designed to
compensate for the above injuries. As we stated in
*Verberg, supra,*

"The Michigan act and those of most States, from the
very beginning, provided compensation payments for
fixed numbers of weeks for certain specific losses even
though the injuries were not disabling as a matter of
fact for such length of time, while granting compensa-
tion for other injuries only during the period of the
resultant disablement. Nowhere yet has this been held
to be an unreasonable classification. The very nature of
such specific losses, never to be returned, appeals to
reason, common sense and humane considerations as
placing them in a class by themselves." 357 Mich 636,
642.

The plaintiff in this case has lost the use of his
left hand. The findings of the referee and of the
Workmen's Compensation Appeal Board were to
this effect and are amply supported by the record.
Plaintiff entered into and became proficient at his
chosen employment after he had suffered previous
injuries to his hand. His damaged hand was of
sufficient industrial use for him to change his
occupation from maintenance carpenter to cabinet-
maker. Now, however, he can no longer work at
that skilled occupation. The referee also found
that his left hand is now industrially useless for
common labor also. With these findings we are
bound, Const 1963, art 6, § 28. Industrial loss of
use of the hand has occurred. This is the loss
actually suffered by the plaintiff. Before the acci-
dent he had full industrial use of his left hand and
maintained his employment. After the accident, he
no longer has this use and was forced to change

employment. He has lost a hand. It is for a hand he should be compensated. But, by whom?

As Chief Judge LESINSKI noted, writing for the Court of Appeals below, the Second Injury Fund provisions, MCLA 418.521; MSA 17.237 (521) do not provide coverage for an injury as is present in the instant case. As the Court of Appeals noted, there are conflicting public policies expressed in the present situation. If this Court holds the last employer responsible for the entire loss, the "full-responsibility" rule, some employers might see a strong financial incentive to discharge all handicapped workers who might bring upon them this aggravated liability. See, 2 Larson's Workmen's Compensation Law (6th ed), § 59.31, pp 88.118–88.119.

Conversely, if benefits were denied the injured employee, it is he who must suffer financial loss, loss of his job, and permanent disablement all without even the meager benefits it was the intention of our Legislature to provide him in compensation. Had the Workmen's Compensation Act never been passed, the employee would at least have been left with his civil law remedies. Instead this remedial act was passed, totally abrogating those remedies the employee had against his employer, in whose employment he was injured. Thus the benefits flowing to the employer from this act were both complete and effective.

"The act was originally adopted to give employers protection against common-law actions and to place upon industry, where it properly belongs, not only the expense of the hospital and medical bills of the injured employee, but place upon it the burden of making a reasonable contribution to the sustenance of that employee and his dependents during the period of time he is incapacitated from work. This was the express intent of the legislature in adopting this law.

\* \* \*

"During the years, with the development of industry and the employment of larger and larger numbers of employees in ‚the business world, the legislature has progressively, even if slowly, kept the act up to date by meeting the changing conditions and requiring industry to assume its share of the new responsibilities. The employers who were happy to be relieved of the old liabilities have sought by legalistic approach of narrow and limited construction of the act to defeat its humanitarian purposes." *Lahti v Fosterling,* 357 Mich 578, 585–587; 99 NW2d 490 (1959).

Because the act is now deficient and ineffective in further protecting the rights of the employer from a conceded inequity, this Court is asked to further restrict the benefits flowing to the employee under the act. This we refuse to do. As Chief Judge Lesinski noted:

" '[A]n \* \* \* inadequacy of the present Michigan Second Injury Fund statute is that it severely limits the kinds of preexisting handicaps that are covered. \* \* \* Thus, persons who have lost a minor member \* \* \* are excluded. \* \* \* It is therefore submitted that if the Michigan statute is to encourage the employment of handicapped persons, it must be expanded to cover all persons having handicaps, both patent and latent, which are serious enough to constitute an obstacle to employment. Note: *Encouraging Employment of the Handicapped in Michigan: A Proposal for Revision of the Michigan Second Injury Fund.'* 67 Mich L Rev 393, 398–399 (1968)." 39 Mich App 370, 378.

We, like the Court of Appeals, recognize the inequities of the situation. The task, however, of expanding the coverage of the Second Injury Fund is a legislative function, not a judicial one.

We hold the petitioner is entitled to an award for industrial loss of the use of his hand. This payment to be made by the last employer.

The case is remanded to the Workmen's Compensation Appeal Board, with instructions to enter an award pursuant to this opinion. No costs, a public question being involved.

T. G. KAVANAGH, WILLIAMS, and LEVIN, JJ., concurred with T. M. KAVANAGH, C. J.

M. S. COLEMAN, J. *(dissenting in part; concurring in part).* In 1955 plaintiff lost his left ring finger and part of his thumb in an employment-related accident. After healing plaintiff was unable to close his hand but was able to continue working in his trade as a cabinetmaker.

Plaintiff was employed by defendant as a foreman in 1966. On March 29, 1966 he sustained another injury to his left hand, losing part of his index finger. The combination of injuries rendered plaintiff unable to continue in his trade. He is now employed in a non-skilled position where he can effectively use his left hand.

On December 6, 1966 plaintiff had a hearing before a workmen's compensation referee. In his findings of fact the referee said the injuries resulted in plaintiff's sustaining "the industrial loss of the use of his left hand". In his decision he relied on *Sorensen v Grand Rapids Metalcraft,* 333 Mich 709, 53 NW2d 590 (1952) and stated that he could not charge the defendant for the conditions which did not wholly result from this injury. The Workmen's Compensation Appeal Board affirmed the referee's reliance on *Sorenson* but modified his award.

The Court of Appeals granted leave in order to confront "the question of continuing validity" of *Sorensen,* 39 Mich App 370, 372; 197 NW2d 511 (1972). The Court said *Sorensen* judicially created an apportionment rule where "the employer pays

only for the claimant's specific member loss in his employment" (p 375). In affirming the appeal board's decision, the Court specifically declined either to overrule *Sorensen* or expand coverage of the Second Injury Fund.[1] In refusing the latter action, the Court stated this avenue to be "a legislative function, not a judicial one" (p 378).

Our Court granted leave to appeal on July 31, 1972. The parties were "directed to cover in their briefs the question as to whether or not compensation, if granted, would be paid to the plaintiff by the Second Injury Fund," 388 Mich 755. I would affirm the opinion of the Court of Appeals.

## Apportionment of Liability Between Employers

Plaintiff contends that *Sheppard v Michigan National Bank,* 348 Mich 577; 83 NW2d 614 (1957) and *Coombe v Penegor,* 348 Mich 635; 83 NW2d 603 (1957) undercut if not overrule *Sorensen.* He notes that *Sorensen* has not been discussed or cited by our appellate courts since it was decided in 1952. He argues that placing full responsibility for the loss of a hand on the current employer is in accord with sound public policy. Plaintiff concedes that on its face the Second Injury Fund does not apply to his situation.

Defendant says *Sorensen* stands unaffected by *Sheppard* or *Coombe* and should be followed. Also, as a matter of public policy, it is argued that if full responsibility becomes the rule, the willingness of employers to hire handicapped or previously injured workers will be dampened. Defendant agrees with plaintiff as to the inapplicability of the Second Injury Fund.

---

[1] At that time found in MCLA 412.8a; MSA 17.158(1). The provision is now to be found at MCLA 418.521; MSA 17.237(521).

The plaintiff in *Sorensen* had lost the thumb and two fingers of his left hand in a 1919 accident. In 1949 another mishap resulted in almost total amputation of the remaining fingers. Plaintiff was awarded compensation based on the loss of a hand. This Court reversed and remanded for entry of an award based on the loss of the two fingers. The Court said "the ultimate disability or loss was occasioned by the results of 2 injuries acting in conjunction" (p 712). In such cases the defendant was held "liable only for the specific loss caused by injury sustained in his employ and not for the disability resulting from that and some previous injury" (p 712).

The *Sorensen* decision drew support from *Winn v Adjustable Table Co,* 193 Mich 127; 159 NW 372 (1916). Plaintiff there had previously lost three fingers of his right hand but was able to work as a carpenter by using his thumb and third finger. While employed by the defendant, another accident resulted in the loss of plaintiff's third finger.

Subsequent to the injury plaintiff reached an agreement with defendant's insurer concerning compensation for the loss of the finger. After 19 of 20 payments were made, plaintiff sought to have the agreement set aside. The Industrial Accident Board did so. It also found plaintiff to be totally incapacitated and allowed him to recover compensation.

This Court reversed the order of the board saying that action "was an attempt to meet a situation not provided for by the statute, and neither the Industrial Accident Board nor this Court has any power to do that" (p 132). The Court felt plaintiff's present injury did not produce total disability:

"The injury must be treated simply as the loss of the
third finger, for which the claimant is specifically com-
pensated by the terms of the statute. The agreement
entered into by the parties was in accord with this
provision and must stand." (p 132.)

On rehearing, 193 Mich 132, 163 NW 906 (1916),
the Court was more explicit in stating why it
disagreed with the award:

"The award was based upon the finding that the
injury, 'together with the previous loss of other mem-
bers of the same hand,' produced a total incapacity. In
making the order it did, based upon this finding, the
board was in error." (p 133.)

As noted above, plaintiff claims *Sheppard* and
*Coombe* impliedly overrule *Sorensen.* These cases
reflect the confusion caused by the 1943 amend-
ments to the Workmen's Compensation Act. The
real issue in those cases was whether the injuries
were "accidental" so as to justify compensation.

Despite plaintiff's reasoned interpretation of
*Sheppard* and *Coombe,* I cannot agree that those
cases overrule *Sorensen* either directly or by impli-
cation. They do not speak to the problem faced in
*Sorensen.* They tell us when a compensable injury
occurs. In the instant case there is no argument
concerning the occurrence of a compensable in-
jury.

Our obligation herein is to determine whether
defendant is to compensate plaintiff for the specific
loss occasioned while he was in its employ or
whether *Sorensen* is to be overruled and defendant
charged with full responsibility for plaintiff's loss
of the industrial use of his hand. In the best
interest of all parties, I would decline to follow the
latter course and would reaffirm the Court created
policy set forth in *Sorensen.*

A comprehensive discussion of the problem faced in the instant case is found in 2 Larson, Workmen's Compensation, § 59. After reviewing the various full responsibility and apportionment rules, the author reaches this conclusion in § 59.31:

"While at first glance it might appear that the apportionment rule favors the employer and non-apportionment the employee, in practice the non-apportionment rule proved the worse of the two evils from the standpoint of the handicapped worker. As soon as it became clear that a particular state had adopted a rule requiring an employer to bear the full cost of total disability for loss of the crippled worker's remaining leg or arm, employers had a strong financial incentive to discharge all handicapped workers who might bring upon them this kind of aggravated liability."

The Court of Appeals after citing this passage said that "[i]n addition to the *Sorensen* decision, then, public policy also dictates against adopting the 'full responsibility' rule argued for by plaintiff" (p 377).

I agree.

Any advantage gained by the particular plaintiff in requiring the last employer to bear full responsibility for the effect of separate injuries (one of which occurred during employment by another) is far outweighed by the potential adverse effect on the opportunity of previously injured and handicapped workers to obtain and retain gainful employment. Many employers are small or relatively so and are active in employing handicapped people. The additional financial responsibility not only for injuries incurred in their own establishments but for those previously incurred would be especially discouraging to a broad hiring policy. The

same reaction can be anticipated from the larger employers.

Therefore, a focus on the situation of all previously injured workers rather than on any particular fact situation indicates that the policy of *Sorensen* remains persuasive.

## *Second Injury Fund*

The Michigan statute providing for the Second Injury Fund said at the time of the instant case, in part:[2]

"If an employee has at the time of injury permanent disability in the form of the loss of a hand or arm or foot or leg or eye and at the time of such injury incurs further permanent disability in the form of the loss of a hand or arm or foot or leg or eye, he shall be deemed to be totally and permanently disabled and shall be paid, from the funds provided in this section, compensation for total and permanent disability after subtracting the amount of compensation received by the employee for both such losses."

There is little question that the Second Injury Fund in principle *should* (but does not) extend to such cases as the present one. As was said in *Whitt v Ford Motor Co,* 383 Mich 726, 730–731; 178 NW2d 917 (1970):

"The purpose behind the legislative creation of the Second Injury Fund under § 8a is expressed in *Verberg v Simplicity Pattern Company* (1959), 357 Mich 636 [99 NW2d 508], at p 643:

" 'Clearly, the purpose of the above statutory provision was to enhance the prospects for employment of certain handicapped persons who had previously sustained specific losses, so that they and their families would have a means of livelihood. The statute made it

[2] 1965 PA 32—REPORTER.

certain, as an inducement to an employer to employ such persons, that in employing a handicapped person he would be required to pay no more if such handicapped person should suffer further injury than he would have been required to pay for such further injury had the person not been handicapped in the first place.' ''

Also see Larson §§ 59.31, 59.32 and *Note, Workmen's Compensation—Encouraging Employment of the Handicapped in Michigan: A Proposal for Reform of the Michigan Second Injury Fund,* 67 Mich L Rev 393 (1968).[3]

However, the fact remains and cannot be avoided that the language of the statute does not encompass the type of injury sustained in the present case. Further, no reasonable interpretation can place plaintiff within its coverage. All parties recognize this. We could not award plaintiff monies from the fund unless we were willing to assume amendatory legislative powers. This we should not do.

I would affirm the Court of Appeals.

T. E. BRENNAN and SWAINSON, JJ., concurred with M. S. COLEMAN, J.

---

[3] The notewriter, at pp 394–395, said the theory is "that the protection afforded by the fund will eliminate any economic disincentive to employing handicapped workers which employers would have under the rule of strict nonapportionment."